## BRYAN v. CATTELL, Auditor of State.

1. MANDAMUS; JURISDICTION OF DISTRICT COURT. The District Court has power to enforce, by writ of mandamus, the discharge of an official duty involving no exercise of discretion, by an executive officer of the State.

2. SAME: AUDITOR OF STATE. The District Court may, by writ of mandamus, compel the Auditor of State to issue his warrant on the Treasurer of State for a sum due a public officer on his salary.

3. OFFICES: INCOMPATIBILITY. The offices of District Attorney and of Captain in the volunteer service of the United States are not, in legal contemplation, incompatible; and an acceptance of a commission as captain in the military service did not, prior to the enactment of chapter 54 of the laws of 1862, operate to vacate the office of District Attorney, of which the same person was the incumbent.

4. SAME. Incompatibility in offices exists where the nature and duties of the two offices are such as to render it improper, from considerations of public policy, for one incumbent to retain both. It does not necessarily arise when the incumbent places himself for the time being in a position where it is impossible to discharge the duties of both offices.

5. SAME: COMPENSATION: NEGLECT OF DUTY. When the statute providing for the compensation of an officer makes no provision for a deduction for absence or neglect of duty, he is entitled to the salary for the time he legally remains in office, without reference to any neglect in the discharge of the duties thereof.

6. LEGISLATIVE POWER OVER OFFICES. The Legislature, when not inhibited by the Constitution, has power to abolish an office, to increase or decrease the duties imposed upon an incumbent, and to add to or take from his salary; and may also add to or change the methods by which vacancies may occur, and make such changes applicable to existing offices and those who hold them.

7. SAME: STATUTE CONSTRUED. Chapter 54 of the Laws of 1862 applied to those officers who, before the time of its taking effect, accepted commissions in the military service, as well as to those who should thereafter receive such commissions; and it operated to vacate civil offices, the incumbents of which, at the time of its taking effect, also held military offices.

*Appeal from Polk District Court.*

WEDNESDAY, APRIL 6.

MANDAMUS. It appears from the pleadings and the agreed statement of facts, that the plaintiff was elected to

Bryan v. Cattell.

the office of District Attorney for the 5th judicial district for four years from the first day of January, 1859. He was duly commissioned, qualified, and entered upon the discharge of his duties. In July, 1861, he was commissioned captain of company D, 1st Iowa Volunteer Cavalry, for three years or during the war; was mustered into the service, and so continued until after the commencement of these proceedings, — his legal residence remaining, however, in Warren county, in said district. His salary was paid him regularly until the 1st of January, 1862. After accepting his commission as captain, or at least prior to said 1st of January, 1862, and until after making this application, he was absent from the State in the military service of the United States, and did not during that time discharge any of the duties of the office to which he was elected. On the 1st of April, 1862, John Leonard was appointed by the Governor to fill the vacancy declared by the executive to exist in said office of District Attorney, who qualified, entered upon and actually discharged the duties thereof, receiving each quarter thereafter the salary as appropriated by law.

This proceeding was instituted in January, 1863, to compel the Auditor of State to issue warrants on the State Treasurer for the salary due and owing, as is claimed, the said plaintiff for the quarters ending the first days of April, July and October, 1862. The defendant, by the Attorney-General, denied the jurisdiction of the Court, and upon this and several other grounds resisted the allowance of the writ. On the hearing, the peremptory writ was ordered, and respondent appeals.

*C. C. Nourse*, Attorney-General, for the appellant.

I. The District Court has no jurisdiction over the Auditor and Treasurer of State. The Constitution makes it the duty of the Auditor to settle all claims against the State

Treasury, and to draw warrants for money directed by law to be paid out of the Treasury. The law provides for no appeal from the decision of the Auditor, and he is not a person or tribunal inferior to the District Court. Const., art. 3, § 1; art. 4, § 22; Revision, 1860, chap. 7, § 71; *The United States* v. *Guthrie*, 17 How., 287; *The Case of Dennett*, 32 Maine, 508; 8 Ga., 360; *Hosmer* v. *Surveyor, &c.*, 7 Texas, 764.

II. This Court cannot control the discretion or review the judicial determination of the Auditor, on *mandamus*. His duties are not purely ministerial. *Decatur* v. *Paulding*, 14 Pet., 515; *The United States* v. *Seaman*, 17 How., 225.

III. The right to an office cannot be tried on *mandamus*. *Quo warranto* is the proper remedy. *The People* v. *Stevens*, 5 Hill, 629; 7 How. Pr. R., 128.

IV. The acceptance of a commission from the Governor of the State as captain in the military service of the United States operated as a resignation of the office of District Attorney. *The People, ex rel.*, v. *Carrique*, 2 Hill, 93; Will. Municipal Corp., 240; *Rodman* v. *Harcourt*, 4 B. Monr., 224; *King* v. *Patterson*, 4 B. & A., 1; *Johnston* v. *Maystron* 1 H. B., 261.

V. Chapter 54 of the acts of the 9th General Assembly, Laws of 1862, applied to officers who, at the date of its approval, had accepted commissions in the military service, as well as to those who should thereafter accept commissions. The Legislature may, as to unearned salaries, either increase or diminish the salary or abolish the office, unless there is some specific constitutional prohibition. *Connor* v. *The Mayor, &c.*, 1 Seld., 285.

*Casady & Polk* for the appellee, contended: 1. That the Courts may, by *mandamus*, compel an executive officer to discharge an official duty which involves the exercise of no discretion, citing *Auditor* v. *Hardin*, 8 B. Monr., 648; *Ken-*

*dall* v. *The United States*, 12 Pet., 610; *The Auditor* v. *Adams*, 13 B. Monr., 150; *Divine* v. *Harvie*, 7 Monr., 443; *Resile* v. *Walker*, 11 How., 272; *Burnett* v. *The Auditor of Portage County*, 12 Ohio, 54; *The State* v. *Moffit*, 5 Id., 358; *Smith* v. *The Commissioners of Portage County*, 9 Id., 26; *The State, ex rel.*, v. *The Treasurer of Wood County*, 17 Id., 184; *The State ex rel.* v. *The Auditor of Hamilton County*, 19 Id., 116. 2. That the act of 1862, if construed to apply to officers who accepted military commissions prior to its enactment, is of doubtful constitutionality. *Puchaw* v. *Spencer*, 2 Ind., 486; 1 Kent's Com., 455; Bouv. Law Dict., "Retrospective." 3. That the offices of District Attorney and of captain in the volunteer service are not, in legal contemplation, incompatible. *District Township of Dubuque* v. *The City of Dubuque*, 7 Iowa, 262; Bouv. Law Dict., "Incompatibility."

WRIGHT, Ch. J.—By the Attorney-General it is claimed: *First*, That the District Court of Polk County, had no jurisdiction to award this writ for the purpose, and under the circumstances disclosed in this record. *Second:* If the court had jurisdiction, then that the Auditor decided correctly in refusing to draw the warrants on the plaintiff's demand, and the writ should, therefore, have been denied.

In obedience to what we understand to be the nature and character of this writ, the power of the judiciary, and the adjudications upon the subject, we are clearly of the opinion that the jurisdictional objection is not well taken. This writ issues upon the order of a court of competent jurisdiction, and when from the District Court, it commands an inferior tribunal, corporation, board or person, to do, or not to do an act, the performance or omission of which the law specially enjoins as a duty, resulting from an office, trust or station. The Supreme Court may also issue it when necessary to the District Court, or in any other case where

it is necessary to enable it to exercise its legitimate power. The law also declares that the writ may be granted on the petition of any private party aggrieved, without the concurrence of the prosecutor for the State. Rev. §§ 3761–3764. The objection made, is, that the District Court of the county where the Auditor of State resides, has no power to order this writ; that he is not an inferior tribunal, board or person, within the meaning of the statute. It is obvious that the Supreme Court could not order the writ, for it would not go to the District Court, nor would it be necessary to enable it to exercise any legitimate power. If the jurisdiction exists anywhere, therefore, it must be in the tribunal selected in this instance.

The powers of the State government are divided into three separate departments, (the executive, legislative, and judicial,) and no person charged with the exercise of powers properly belonging to one department shall exercise functions appertaining to either of the others, except as in the Constitution is expressly directed or permitted. Const. § 1, art. 3. The Auditor of State belongs to the executive department. § 22, art. 4. And from these provisions the argument is that in ordering this writ, the District Court assumed that the executive department was inferior to the judicial, or that the Auditor, who is the general accountant of the State, was an inferior officer or person. The argument, however, mistakes the meaning of the constitutional provisions quoted, and as a consequence reaches a wrong conclusion.

No one now doubts the power of the judicial department to declare void an act of the Legislature, if in conflict with the Constitution, though the act may have been passed with all the required formalities, and received the executive sanction. And yet we have never heard it suggested that in this, the judicial was exercising functions appertaining to the legislative department. Nor has it to our knowledge

ever been supposed that in exercising such power, the courts assumed that the legislative and executive were inferior to the judicial power. The Constitution, by the inhibition in question, designed, (we state the proposition by way of illustration), to prevent the executive of the State from being at the same time a judge of the Supreme Court; a member of this Court from being, during his term of service, Secretary of State, or Treasurer; a member of the Senate or House from being Governor; the judicial department from discharging duties or exercising the functions devolving upon or appertaining to the executive. Thus, the Governor cannot adjudicate cases pending in this Court, nor can this Court grant pardons and reprieves. So neither can this Court make the law, nor can the Legislature assess fines, or render judgments. To some tribunal, however, must be entrusted the power of passing upon the legality of the acts of those filling these several departments, and especially the executive and legislative. And to assume that if this power is exercised, there is an interference with the functions of such other departments, awards conclusiveness to their action. For such action either is or is not conclusive. No one pretends that it is always free from examination or correction. If claimed to be illegal, what tribunal, under our form of government, determines it? Most clearly the judicial. And yet such examination cannot be had, according to the argument now under consideration, without improperly interfering with the functions of another co-ordinate department, without infringing upon the Constitution.

MARSHALL, Ch. J., in *Page* v. *Hardin*, 8 B. Monr., 648, (in an opinion, we may remark, very able, and quite applicable to many of the questions made in this case), referring to the very point now under consideration, uses this language: "But his, (the Auditor's) determination against the claim cannot be conclusive, because the right, if it exists, is a

legal right, founded in the law, and therefore to be ascertained and maintained by the law; whence it follows that there must ·be some legal remedy above, and independent of the Auditor's will or judgment for the enforcement of the right, and the redress of the wrong by its being withheld. The remedy is, in our system, to be found in the resort, by the ordinary modes, to the judicial power as administered in courts of justice. This, as between individuals, is the final test of legal right and wrong, and not the less so because in any case the right claimed or the wrong alleged may be of such a character as to bring in question the efficacy of official acts done by the jurisdiction of other departments of the government. Not that the judicial power, or .the judicial department, is superior to the others, or that the depositories of that power are necessarily more enlightened than all others, but because it has been found essential to the preservation of individual rights, and to the regular and equal operation of a free government, that the three great departments should be entrusted to different bodies of magistrates, and that one of them should be a judicial department, having for its peculiar province or duty the administration and exposition of the laws in their application to individuals, and especially in the ascertainment and enforcement of rights, and the repression and redress of wrongs. * * * The executive department, and all of its officers are as much bound by the constitution and laws as the legislative, and have no more power to violate the rights of individuals secured by law. The power, obviously judicial, of ascertaining and expressing the legal rights of individuals, is in effect the power of protecting those rights from violation by the act or authority, either of individuals or of the legislative or executive departments; and it necessarily involves the function of deciding in every case properly before it what are the legal rights of the parties, and how far in point of law, that is under the constitution and laws, those rights

have been effected by any and every act, relied on for their support or destruction.  \* \* \*  The judiciary pretends to no direct control over the action of the Legislature, or of the supreme executive. But it may decide upon the validity of the acts of either, affecting private rights. And by the writ of *mandamus* it may coerce a ministerial officer, though of the executive department, to the performance of a legal duty for the effectuation of a legal right." And we may remark that those thoughts have peculiar pertinency under our law. For it will be remembered that the writ may issue on the petition of the party aggrieved. The proceeding is not here, as in England, and in most of the States, in the name of the Government. In the King's Bench, where the King is deemed to be potentially present, (and where, only, in England, it can be enforced), the proceeding " stands on the foot of contempt, and is intended to reform official delinquency." 13 Pet., 607. Here the proceeding may be in the name of the party aggrieved, and while the substance of the law governing the writ and the practice under it, except where expressly modified by statute, is to be found in the common law, individuals may invoke the order to enforce a legal duty, or to secure their legal rights.

In *Kendall* v. *The United States*, 12 Pet., 526 (see p. 609), which was a proceeding by *mandamus* to compel appellant, as Postmaster-General, to carry to the credit of the parties applying for the writ a credit found due them under the law, according to the decision of the Solicitor of the Treasury, Mr. Justice THOMPSON says: "We do not think the proceedings in this case interfere, in any respect whatever, with the rights or duties of the executive, or that it involves any conflict of powers between the executive and judicial departments of the government. The *mandamus* does not seek to direct or control the Postmaster-General in the discharge of any official duty partaking in any respect of an executive character, but to enforce the performance

of a mere ministerial act, which neither he nor the President had any authority to deny or control." And though the Chief Justice, and Justices BALDWIN and CATRON, differed with the majority in that case, we do not understand them to advance any position in the least conflicting with the doctrine just quoted. Indeed, Justice BALDWIN expressly says, that "the act was one which might properly be enforced by *mandamus;*" but denied that the Circuit Court of the District of Columbia had authority by law to issue the writ. It is nowhere suggested that the exercise of the power by the judicial department would interfere with any function properly appertaining to the executive. And in this connection we remark that the case of *Brashear* v. *Mason*, 6 How., 92, differs from that just cited as well as the present, in the important fact that there, as the Court held, the writ was asked "to guide and control the judgment or discretion of the Secretary of the Navy in matters committed to his care in the ordinary discharge of his official duties;" and the writ was denied in *Decatur* v. *Paulding*, 16 Pet., 497, upon substantially the same ground. In the latter case, the point above quoted, as ruled in 12 Pet., 524, is expressly affirmed.

In *United States* v. *Guthrie*, 17 How., 284, much relied upon by the Attorney-General, Justice DANIEL, who prepared the majority opinion, expressly held, that the point now under consideration did not arise, though discussed by counsel, but that the only legitimate inquiry was whether a person could be arrested in the Court below to command the withdrawal of a sum of money from the federal treasury, to be applied in satisfaction of disputed or controverted claims against the United States.

Dismissing this part of the case with the suggestion that the word inferior, as used in the statute, has reference to or qualifies tribunal, and not person, — that the word officer is not used, and that within the purview of the law there

can be no such thing as an inferior or superior person, — we pass to the consideration of the second proposition. And briefly stated, it is, that the Auditor, in rejecting this claim, did not act ministerially, merely; that he had many questions to determine; that he had a discretion, and that this discretion could not be controlled or reviewed by *mandamus*. If the premises are correct, the conclusion is manifestly correct. Rev., § 3763.

The law declares that the salary of the District Attorney shall be audited and paid like that of other State officers. Rev., § 380. These salaries were formerly to be paid quarterly (now monthly), upon warrants to be drawn therefor by the Auditor of State upon the Treasurer. The Auditor's duty is to draw such warrants, as it is money "directed by law to be paid, as the same may become payable." §§ 41, 70. His duty, then, is a plain and simple one. He has no discretion. If the Governor, Secretary of State, or any other State officer, applies for such warrant, his duty is plainly and clearly marked out. True, he might, out of abundant caution, in case of doubt (as in this instance), withhold the same. And we go even further, and say that he not only might do so, but, in some cases duty and the interest of the State would dictate this course. But this not because he has really any legal discretion in the premises, but to avoid prejudice to the State, by first taking the opinion of a legal tribunal. But because he does decline is no reason for claiming that, as he has exercised what is styled his discretion, he cannot afterwards be compelled to do the act. If so, then, as before stated, his decision would amount to a finality, and *mandamus* could not reach him in any case. Such a determination cannot be construed as affecting the legal rights or duties of the parties. The Auditor's duties are legal, and may in some manner, sooner or later, be brought to the legal test. A warrant legally due and demanded, he should issue. True, he has the

physical power to refuse, and might, as in this case, without being chargeable with the least moral delinquency, or the slightest imputation of want of capacity, do so. But in all this he is but the agent of the law, and is subject to its ultimate coercion for such refusal. In the language of the Kentucky case (*Page* v. *Hardin, supra*), "If the right claimed is sustained by the law, the writ of *mandamus* is the interposition of a tribunal appointed by the law for the ascertainment and enforcement of such rights, by the application. of a remedy essential in a general point of view to the regular operation of the laws, and rendered necessary in the particular instance for the effectuation of a right."

The case above cited, in 12 Pet., 524, fully accords with these views. All the cases, as well as the statute, recognize a distinction between those acts resting in discretion, and such as are plainly, clearly, definitely, prescribed by law. Thus the Auditor is required to settle all claims against the treasury, and when the law recognizes a claim, but no appropriation has been made, he is nevertheless to settle it, and give to the claimant a certificate, and report the same to the next general assembly. (§ 71, ch. 5.) Now, his judgment or discretion as to the amount he should allow on such settlement, could not be controlled by *mandamus* but he could be compelled to act, or after he had thus settled the amount due the claimant, he could be compelled to grant the required certificate. Or, take a case where the law makes an appropriation, and the settlement of the claim is referred to the Auditor, he cannot be compelled to allow a particular sum, but may be compelled to issue his warrant for the sum which he does audit or allow. And whether there is a discretion, is of course to be determined by the courts, in each case, where the process of *mandamus* is invoked. If there is, then, though ever so unwisely exercised, there can be no interference. If not, then the omission or performance of an act, specially enjoined by

law, as resulting from the office, may be compelled. It seems to us, that the duty in this case did not rest in discretion, and that the Court had jurisdiction.

We are then to inquire, in the second place, whether plaintiff was entitled to the salary claimed. And notwithstanding several questions are discussed in this connection by counsel, the space already occupied demands that we should dispose of them briefly.

The Revision, § 662, declares that every civil office shall be vacant upon the happening of the following events: 1. Resignation. 2. Death. 3. Removal. 4. Refusal or neglect to qualify. 5. The decision of a competent tribunal declaring the same. 6. Ceasing to be a resident of the State, District, &c., in which the duties are to be exercised, or for which the incumbent may have been elected. 7. Failure to elect. 8. Forfeiture as declared by any law of the State. 9. Conviction of an infamous crime. By chapter 54, Laws of 1862, this section was amended by adding as a tenth or further clause: " The acceptance of a commission to any military office, either in the militia of this State, or in the volunteer service of the United States, which requires the incumbent in the civil office to exercise his military duties out of the State for a period not less than sixty days." This latter act, by its terms, took effect April 2, 1862.

Appellant claims that the acceptance of another office, incompatible with that held, creates a vacancy; that this is true upon general principles and the genius and character of our form of government, if not included in any express provision of the statute; that the office of captain in the volunteer service is incompatible with the office of district attorney, and that when plaintiff accepted the captaincy in July, 1861, he surrendered the other office, and had no longer any right to the salary. By the appellee, it is maintained that the office of captain is not, within the

meaning of the law, incompatible with that of district attorney, but that if it is, then as incompatibility is not named in the statute as one of the methods in which a vacancy may arise, it cannot be so regarded by the Courts.

Our opinion is, that we are not confined to the statutory causes or events in determining whether a vacancy exists. If a party accepts another office, which, within the meaning of the law and the cases, is incompatible with that which he holds, we have no doubt but that the first one would become vacant. Thus, as is well said by appellant, if a Judge of the District Court should accept a seat upon this bench, a vacancy would be created in the first office, and yet the statute certainly does not in terms cover such a case. So, if the Auditor of State should take the office of Treasurer; and many other cases that might be stated.

But what is meant by incompatible? Does it cover every case where the incumbent places himself in such a position that he cannot, for the time being, discharge the duties of the first office? Or does it embrace those cases where the nature of the duties of the two offices are such as to render it improper, from considerations of public policy, for him to retain both? We have no statutory declaration, in general language, prescribing what offices, from their nature, are incompatible. Looking to the common law, we are of the opinion, that the incompatibility must be such as arises from the nature of the offices, or their relation to each other. Or, as Mr. BOUVIER has it: "They are such as are subordinate to, or interfering with, each other; for example, a man cannot be at once judge and clerk of the same court." BAILEY, J., in *Rex* v. *Tizzard* (17 Eng. C. L., 193), says: "The two offices are incompatible, where the holder cannot, in every instance, discharge the duties of each. And that incompatibility, as here used, must be such as arises from the nature of the duties, in view of the relation of the two officers to each

other, seems to have its foundation in reason. If appellant's proposition is correct, then plaintiff would have surrendered his office, if he had volunteered and gone into the service as a private. The acceptance of a captaincy would not change it, for his obligation to continue in the service would be no greater in the one case than the other. The effect of such a rule would be to have the vacancy depend not upon the acceptance of an office, but upon a particular employment. And yet this will scarcely be claimed. Not only so, but it by no means necessarily follows that a person in the military service might not discharge all the substantial duties of the attorneyship. It is scarcely probable that he could or would, and yet he might. Suppose the plaintiff in this case had been permitted by his superior officers to return, and attend all the courts in his district, would it have been claimed that because he was captain, he was disqualified from discharging such duties? Or suppose he had been so connected with the service that his regiment had been retained in the State, or stationed in the county of his residence, would his right to discharge the duties of the former office have been disputed? It seems to us clearly not. And if not, it is plain that there is nothing in the nature of the two offices incompatible with each other. The objection rests more upon how and where the duties of the second office are to be exercised, than upon any necessary conflict between such offices. The argument carried out would declare a vacancy, if the officer accepted an agency, the duties of which took him beyond the State for an indefinite time.

But it is suggested that plaintiff, during the whole time for which this salary is claimed, was absent from the State, and failed and neglected to discharge any of the duties of his office. And this has presented the greatest obstacle to the allowance of plaintiff's claim for the time covered by the months of January, February and March, 1862. It

seemed to us, the dictate of reason and good conscience, that the State should not be required to pay for services never rendered; that public officers should be paid their salaries when and only when they discharged the duties imposed upon them by law; that the same rule should apply to the State as to individuals, and that no Court ought to consent to the auditing of a demand against the State where it was admitted that the claimant made no pretense of having rendered the services for which he claims. It must be remembered, however, that we are dealing with a practical, and not an abstract, question. And practically, the difficulty in the view suggested is, that it would be impossible to tell where the true line should be drawn. That is to say, how long an absence from official duties — how great delinquency shall work a forfeiture of salary. In the absence of statute, shall it be one day, or one week, or one month, or one year? Where shall faithfulness end, and delinquency begin? Add to these considerations the fact, that it is frequently impossible to tell to what extent the services of the officers were necessary, at the time covered by the supposed delinquency, and the propriety of the rule which entitles the officer to his salary so long as he remains in office, becomes reasonably manifest. The better and safer rule doubtless is, that if he is in point of law actually in office, he has a legal right to the salary pertaining to it. His conduct may be such as to render him liable to removal, but when the statute makes no deduction for absence or neglect of duty, and the State takes no step as a consequence of such absence or delinquency, we suppose it is the legal right of the officer to demand the full salary allowed him by law. Different questions might and would of course arise when it was claimed that there had been a relinquishment of the office, or that the party, by removal from the State, or by resignation or the like, had abandoned it. Such questions

do not arise, however, in this case, and for the three months named, therefore, we hold that plaintiff was entitled to his salary.

As to the subsequent time, still other questions arise. The right of the Governor to fill vacancies occurring in this office is conceded. But it is also claimed and conceded, that he has no power to create a vacancy; that there must be a vacancy before the right or power to fill it arises. The question then is, whether, after the taking effect of chapter 54, Laws of 1862, there was a vacancy in this office, and whether, at the time, the Governor had the power to fill the same.

This argument is advanced. The citizens of the State, including those holding the civil offices, of certain ages, are liable to perform military duty, and may be drafted; that they must answer the call, or be held liable as deserters; that if they respond, then, under this law, they forfeit all right to any offices held by them, and that a statute presenting such an alternative is of doubtful constitutional validity. As to this position, we need only say that plaintiff's service was voluntary, not compulsory, and the rights of an officer when drafted, it will be time enough to consider when the question arises.

That it is competent for the Legislature to abolish an office, increase or decrease the duties devolving upon the incumbent, add to or take from his salary, when not inhibited by the Constitution, we entertain no doubt. We are equally clear that it is within the legislative power to add to or change the methods in which vacancies may occur, and make such changes applicable to existing offices, and those holding them. And it was doubtless upon this theory, and this construction of the Act of 1862, that the Governor appointed Leonard on the 1st of April of that year. If he had the power to do this, then the person so appointed, and not the plaintiff, was entitled to the salary.

If not, then plaintiff's right would not be affected, for the payment of the salary to one not legally entitled to it, could not interfere with the rights of the legal incumbent. And not without some doubt, our opinion is, that the Governor had the power to make the appointment, and that after the 1st of April, or the quarter ending at that time, the Auditor properly denied plaintiff's claim.

If, within a reasonable time after the passage of this law, plaintiff had relinquished his position of captain in the military service, and returned to the actual discharge of his civil office, and claimed its emoluments, the case would have presented a question of more difficulty. We cannot believe, however, that the act was intended to apply solely to those who might subsequently accept the commission named. It is known as a part of the history of the State, that several instances of this kind had occurred, and were then existing. The consequence was, that the administration of the laws was being seriously interfered with, and the design was to afford a remedy. Persons holding these offices and military commissions at the same time, had no vested right in them. In view of the public welfare, and the correct administration of the laws, the Legislature could provide for filling the civil offices. And when those in the military service continued in the discharge of the duties thus devolving, making no claim for months afterwards to hold the civil position, we think they should be and are estopped from demanding the State salary, and that they cannot gainsay the right of the Executive to fill the office, as in case of a vacancy.

Plaintiff's claim should have been allowed up to April 1, 1862, and after that it was properly disallowed. With this modification, the order below is affirmed, appellee paying costs of appeal.