# N. Y. COMMON PLEAS.

## The People *ex rel.* James Ryan agt. Andrew H. Green, Comptroller, &c.

It is an old and well settled principle that no person can hold incompatible offices.

Offices are said to be incompatible and inconsistent so as to be executed by the same person : 1st. When, from the multiplicity of business in them, they cannot be executed with care and ability ; or, 2d. When, their being subordinate and interfering with each other, it induces a presumption that they cannot be executed with impartiality and honesty.

It has been invariably held that the incumbent of two offices which bore no relation subordinating one to the other were not incompatible.

The *relator*, by accepting the office of *member of assembly*, did not thereby vacate his office of *deputy clerk of the special sessions;* the two offices were not incompatible.

A *mandamus* to compel the comptroller to pay the relator's salary during the months he acted as member of assembly, ordered.

*Special Term, October,* 1873.

The relator was appointed, on May 1, 1870, deputy clerk of the court of special sessions of the peace for the city and county of New York, pursuant to the act, chapter 383, laws of 1870, and reappointed as such deputy clerk under the provisions of the act, chapter 373, laws of 1872. While such deputy clerk he was, in November, 1872, elected a member of assembly for the year 1873, and accepted such office, and served as a member of the legislature of the state during the months of February, March, April and May, 1873. The comptroller of the city and county of New York refused to pay him salary as deputy clerk of the special sessions during said months, on the ground that he vacated the office of deputy clerk by accepting that of member of assembly.

Vol. XLVI 22

RICHARD O'GORMAN *and* WILLIAM F. McNAMARA, *for the relator.*

E. DELAFIELD SMITH, *corporation counsel, for the comptroller.*

J. F. DALY, *J.*—No provision is found in the constitution or in the statute law of this state to that effect; but it is claimed that, at common law, the two offices are incompatible, and the acceptance of the last vacated the first. The principle is an old and well settled one that no person can hold incompatible offices. According to an early authority incompatibility as to office is divided into two classes. " Offices are said to be incompatible and inconsistent so as to be executed by the same person, first, when, from the multiplicity of business in them, they cannot be executed with care and ability; or, second, when, their being subordinate and interfering with each other, it induces a presumption that they cannot be executed with impartiality and honesty" (4 *Inst.*, 100, *Bac. Abr.; tit. Office, K*). Among the multitude of cases reported containing adjudications as to what constitutes incompatibility in offices, illustrations are found of the latter class, and none whatever in the former. Indeed, where the question arose concerning the incumbent of two offices which bore no relation subordinating one to the other, it has been invariably held that they were not incompatible. The cases of adjudged incompatibility may be briefly stated.

In *Rex* agt. *Pateman* (2 *Term R.*, 777) the defendant held the offices of alderman and town clerk. These were held to be incompatible, because the clerk was a ministerial officer in the court held by the aldermen, and because the accounts of the clerk were audited by the aldermen.

In *Verrier* agt. *The Mayor of Sandwich* (1 *Sid.*, 305, 2 *Keb.*, 92) the defendant was mayor and town clerk, and the offices were declared incompatible, because the former was a judicial and the latter a ministerial office in the same court.

The clerk might be fined by the court of record held by the mayor.

In 4 *Inst.*, 310, the cases are cited of a forester by patent for life who was made a justice in Eyre for the same forest, and of a warden of the forest made justice in Eyre of the same forest. These were adjudged incompatible, because it was the duty of the justice to judge the acts of the forester and the warden; and, therefore, both offices should not be held by the same person.

In *Dyer's Case* (*Dyer*, 158, 6) a justice of the common pleas was made justice of the king's bench, and these offices were said to be incompatible, because the duty of the latter court was to correct the errors of the former.

In the case of *Blissell* (*note to Rex* agt. *Godwin*, 1 *Doug. R.*, 397), where one attempted to hold the offices of alderman and of chamberlain, in the same municipal corporation, it was held that the offices were incompatible because the aldermen were to audit the chamberlain's accounts; and, in holding both, the defendant would have to supervise his own acts. The case of *Millwood* agt. *Thatcher* (2 *Term R.*, 82) illustrates the same principle, although it is not, strictly speaking, an authority on the point, because the discussion of the question of incompatibility was not necessary to the determination of the case, and was so stated by all the judges—by Ashurst, J., particularly, on whose dictum much stress is laid in opposing the claim of the relator in this court. Thatcher was one of twelve jurats or aldermen of the borough of Hastings; any two of the jurats, with the mayor, might hold the court of record for the borough. Thatcher was elected town clerk, and assumed to hold both offices, although the town clerk was clerk of the court holden by the jurats, and he was thus a judicial and ministerial officer in the same court. He urged that, as there were twelve jurats and any two might hold the court, he would possibly never be called on to sit. Ashurst, J., said that it was not necessary to decide the question of incompatibility; but, if it were, he

should say that the offices were incompatible because there might be cases where it would be absolutely necessary for him to act as jurat, as in case of the sickness of all the others; and if there were one possible case in which he might be called upon to act, that was an answer to the argument. BUTLER, J.: That as the charter of the borough provided for a mayor, twenty-four jurats and a town clerk, the corporation could not reduce the number by consolidating two of the offices. GROSS, J., put his decision in favor of the defendant because the action was brought to test the right to the last office accepted; that of town clerk. Judgment in the case was unanimously given for the defendant Thatcher, the court saying that if the offices were compatible he was rightfully in the second office; and if they were incompatible he was also rightfully in the second office because the acceptance of the last office vacated the first held. This case, in fact, stands as authority on the last point alone, for it definitely settled which office was vacated if a person accepted two incompatible ones. The principle was first adopted in *Rex* agt. *Trelawney* (3 *Burr*, 1615) that, whether the last office were superior or inferior to the first, the first was the one vacated. And this is the rule to this day in England and America. This much attention has been given to the case of *Milward* agt. *Thatcher* because the dictum of ASHURST, J., above quoted— to the effect that if an occasion might ever arise where an incumbent of two offices was called on to perform the duties of both at the same time, the offices were incompatible—is, as a general proposition, likely to mislead. In the first place it was not an enunciation of any principle involved in the decision of the case; and in the next place the incompatibility of the offices held by Thatcher arose solely from their relation to each other in the same court; one being subordinate and ministerial, and the other judicial. And this view of that case is expressed in a later English case (1830, *Rex* agt. *Jones*, 1 *Barn. & Ald*, 677), LITTLEDALE, J., speaking of it and two others cited above, saying: " *Verrier* agt.

*Mayor of Sandwich, Milward* agt. *Thatcher*, and *Rex* agt. *Pateman* are clearly distinguishable from the present case. The offices of mayor, of jurat and of alderman, in those cases, were judicial, and, therefore, incompatible with that of town clerk; and in the latter case the town clerk's accounts were audited by the aldermen."

In *Rex* agt. *Patterson* (4 *B. & Ald.*, 15), where the defendant, being an alderman and justice of the peace, was appointed county treasurer, it was intimated by the court (1832) that the offices were incompatible, because the treasurer was a ministerial officer under the justices, and had to deliver in his accounts to them.

In *Rex* agt. *Tizzard* (9 *B. & C.*, 421) the defendant was clerk of the borough of Weymouth, and also alderman. The offices were held to be incompatible, because, says lord TENTERDEN, the clerk was removable by the aldermen for neglect of duty, and he would have a vote on his own removal, thus filling the incompatible offices of master and servant; and so, because he would, as alderman, have a vote on his own salary as clerk. BAYLEY, J., said he thought two offices were incompatible where the holder cannot in every instance discharge the duties of each; and in the two questions of a motion and salary the town clerk is not competent to discharge the duty of an alderman.

The illustration here given by BAYLEY, J., shows that his remark does not apply to the physical ability of the incumbent to discharge the duties of each office in every instance, but to the impropriety and impolicy of permitting him to do so. Even if a wider application be given to it, it would not, as other cases in England and America show, apply to cases where the incumbent of two offices has a deputy or assistant to perform the duties of one while he is personally employed in the other. It will be perceived that in all the cases reviewed the offices declared incompatible are such as bear a special relation to each other; one being subordinate to and interfering with the other so as, in the language of COKE, to

induce the presumption that they cannot be executed with impartiality and honesty. And there are no cases of adjudged imcompatibility involving any other principle.

The books, on the other hand, contain many cases where two or more offices held by the same person are declared not to be incompatible, but rightfully enjoyed.

In *Rex* agt. *Trelawney* (3 *Burr*, 1615) the defendant held the offices of steward and capital burgess of the same corporation, and the court refused to oust him because the offices by custom had been held together for a hundred years back. This authority for one incumbent holding two offices, arising from custom or usage, is discussed and recognized in cases referred to below.

In *Rex* agt. *Jones* (1 *B. & Ald.*, 677) the defendant was chosen town clerk of the borough of Carmarthen, and afterwards elected councilman, and held both offices. It was the duty of the town clerk to attend the meetings of the common council and record their proceedings, and also act as prothonotary of the court of record of the borough.

The defendant acted as councilman, voting, &c., and immediately afterwards acted as town clerk, recording the proceedings. Lord TENTERDEN said that the offices were not incompatible; but if the person filling the offices were in relation of master and servant they would be. LITTLEDALE, J., concurred, because the common council had no power to regulate the fees of the clerk. TAUNTON, J., said that no particular rule could be laid down; but every case of incompatibility must depend upon its own particular circumstances. The judges in this case distinguished it from those of *Rex* agt. *Pateman*, *Verrier* agt. *Mayor of Sandwich*, and *Milward* agt. *Thatcher* (*supra*), because, in those cases, the defendants assumed to hold offices, the duties of which were respectively judicial and ministerial, and therefore incompatible.

In the United States the common law doctrine of incompatibility of offices has been fully recognized; but the cases

under it show that the mere fact of one incumbent holding two offices does not vacate the first unless there is incompatibility arising from the nature of the offices and their relation to each other, or from the necessity of the incumbent performing the duties of both offices at all times in person and not by deputy.

In the *State of Missouri* agt. *Moore* (48 *Mo.*, 242) the relator was county clerk, and afterwards elected clerk of the circuit court. It was held that the offices were not incompatible, although the duties would have to be performed at the same time in different places, because they might be performed by deputy. If the duties were necessarily personal the offices would be incompatible; and, finally, that as the offices had been held by one person from the earliest history of the state, and the legislature, while declaring other offices incompatible, were silent as to this, such tacit approval of the practice must have great weight. The case of the *State of Missouri ex rel. Owens* agt. *Draper* was cited; but in that case the incompatibility was adjudged under special provisions of the state constitution and the laws of Missouri.

In *Bryan* agt. *Cattell* (15 *Iowa*, 550) the plaintiff was district attorney of the county, and accepted a commission as captain in the volunteer service of the United States, and absented himself on active duty from his office. It was held by the court that the office of district attorney was not vacated by accepting the other; and that incompatibility of office exists where the nature and duties of the two offices are such as to render it improper, from considerations of public policy, for an incumbent to retain both. It does not necessarily arise where the incumbent places himself, for the time being, in a position where it is impossible to discharge the duties of both offices.

The brief review here given will show the tendency of the cases on the question of incompatibility. Lord MANSFIELD said, in *Rex* agt. *Gayer* (1 *Burr*, 245), " that the general questions concerning the incompatibility of offices are a large

field indeed;" and it seems difficult to judge every case by an inflexible rule, or to do more than follow the suggestion of TAUNTON, J., in *Rex* agt. *Jones* (*supra*), and judge every case by its own particular circumstances. The office of deputy clerk of the court of special sessions is not, as its name might indicate, a subordinate office, whose powers and duties are those delegated by the clerk of that court. The name is a mere distinguishing appellation of an office equal in its functions in all respects to that of clerk of the court of special sessions. The two officers are appointed by the same authority for the same term, take separate oaths of office, and file separate official bonds. They are wholly independent of each other as to duties; all those performed by the deputy clerk are such as are to be performed by the clerk, although there are special duties to be performed by the clerk alone.

If the two officers be present at the same time there are duties but for one, and, in the absence of the deputy clerk, the clerk may perform all the duties (*Laws of* 1858, *chap.* 282). The absence of the deputy clerk, therefore, does not impede the performance of the duties of that office by the clerk.

Nor is it because the relator is called " deputy clerk " that duties cannot be performed by an assistant. His powers are not delegated from the clerk, but are derived directly from the statute; and whatever power the clerk might delegate the deputy might equally.

If the clerk accepted the office of member of assembly, and could answer objections thereto that all the duties of clerk were performed by the deputy clerk, or such as acted for him, and no inconvenience had ensued or could ensue, the deputy clerk may well urge that in his absence all the duties of their common office were performed by the clerk; and it is not necessary that he should at all times be present in person, there being a common duty for him and the clerk that can be performed but by one at a time.

The office of deputy clerk is held for a term of six years;

People agt. Green.

that of member of assembly for one year, with a term of service not contemplated to extend beyond a hundred days (*Constitution* 1846, *article* 3, § 6), and seldom extending longer than five months, making, in the case of the relator, but a temporary absence for a short period compared to his term of office as deputy clerk. That the duties of member of assembly have to be performed at Albany does not affect the question in this case, since there is an officer in New York to perform the duties imposed on the deputy clerk of the court of special sessions; and no more hazard to public interests is occasioned than in the very frequent cases where an assistant or deputy is left to exercise the powers of the principal officer in his absence.

Neglect of duty by an officer, absence from the place where the duties of his office are to be performed, non-user of powers or abandonment are not modes of vacating an office in this state; but, if unjustifiable, are grounds for removing him from office by the proper authority. The rule in other states appears to be the same. In the case of *Page* agt. *Hardin* (8 *B. Monroe*, 648, 666, *Kentucky*), where the secretary of state, in violation of an express statute, persistently absented himself from the seat of government and left the performance of his duties to an assistant, it was held that he had not vacated his office. In the case of *Bernard* agt. *City of Hoboken* (3 *Dutcher*, 412) the fact that a local officer of that city left the state of New Jersey, went west, remained away for a considerable time, with some evidence of intention to stay away permanently, was held not to be, at law, a vacation of his office; but it was left to the jury to say if there was an intention on his part to relinquish or abandon it.

In this state the vagueness of the common law rule has been in a measure limited by statute. A local office becomes vacant if the incumbent ceases to be an inhabitant of the district, county, town or city for which he shall have been chosen or appointed, or within which the duties of his office are required to be discharged (1 *R. S.*, 122, 34, § 4); and no

other abandonment or relinquishment is provided for by law. There is, of course, no question of the authority of the proper tribunal to remove a local officer from office for non-performance or neglect of duty, even if such neglect arise from his acceptance of another office compatible with the first, such authority being always reserved for the public good.

But the sole question before me now is whether the relator, by accepting the office of member of assembly, thereupon absolutely vacated his office of deputy clerk of the special sessions, upon the ground that the two offices were incompatible. My conclusion is to the contrary.

1st. Because there necessarily need be no neglect of duties of the office of deputy clerk for the short period that the relator might be required to be absent attending the sessions of the legislature; there being another officer present to perform all those duties.

2d. The appointment by law of a clerk and deputy clerk, two officers of equal authority, to perform the same duties, one only being needed to perform them at one time, having in contemplation the absence at times of one of such officers, and evidencing an intent that the personal presence of both is not at all times necessary.

3d. And for the further reason that the custom or usage in this state has been for local officers to hold as well legislative or *quasi* legislative offices, the duties of which are to be performed at the capital of the state. That such custom or usage is to be considered as authority for the practice has been shown above (*Rex* agt. *Trelawney*, 1 *Burr*, 1615; *State of Missouri* agt. *Moore*, 48 *Mo.*, 242). Such custom in this state has been attended by a silence on the subject in the statutes, which, according to the last case cited, evidences the approval of the legislature, and must be considered in determining the question. Such usage follows that which has also prevailed in England; local officers there being elected to parliament, and special statutes having been enacted to provide which local officers shall not be eligible to serve

in parliament, all other persons being eligible (*Jacob's Law Dict., tit. Parliament*, 6 *B*).

In this state not only have local officers been elected to both houses of the legislature, but there is even higher authority in the cases of certain local officers accepting offices of a legislative character, the duties of which interfered with the performance of their local duties. I allude to the delegates to the several constitutional conventions of this state. In the convention of 1866-7 nearly one-fourth of all the delegates held local city, county or town offices, of a judicial, legislative or executive character. The chief justices of the three superior courts in different counties of the state, other judges of the same courts (in one instance the whole bench), surrogates, justices of inferior courts, members of the boards of education, officers of city and county departments of different localities, were all members of that convention.

In the convention of 1846 many delegates were local officers; and in the convention of 1821, the chancellor was a delegate. In every case there was, necessarily, a suspension of other official duties during the very long sessions of the conventions, which extended over a longer period than a session of the legislature. The duties of delegate were as multifarious and engrossing as those of member of assembly, and had to be performed at Albany. There was, necessarily, loss of service to the public in the non-performance, by such delegates, of their local duties, especially in the case of judicial and other officers whose powers could not be delegated. If the argument of the respondent is correct, it follows that all these officers vacated their offices when elected to the constitutional conventions, since such offices were far more obnoxious to the charge of incompatibility than those held by the relator, Ryan.

4th. The offices of the relator are not incompatible, as having any such relation to each other as suggests that they could not be performed by the same person with honesty and impartiality. This was expressly conceded on the argument.

People agt. Green.

It was also conceded that no inquiry was to be made into the performance by the relator of his local duties while acting as member of assembly (*Charter, Laws of* 1873, *chap.* 335, § 29). But the sole objection to the relator's claim is based on what the counsel for respondent termed the "physical incompatibility" of the relator's offices, arising from the assumed fact that the duties of each required his presence in different places at the same time.

This question was considered by the supreme court at special term at the application of the same relator for the same salary, and the learned justice who presided was of opinion that the offices were incompatible; but as that point had not been suggested nor argued by counsel before him, he gave leave for an alternative mandamus in order that the relator's counsel might be heard upon it.

The alternative mandamus has been applied for and issued from this court without objection, and the return made by the comptroller to the writ raises the question here discussed, counsel having been fully heard upon objection to the sufficiency of the return. The opinion delivered by the learned justice of the supreme court appears to hold that the relator's offices were incompatible upon the dictum of ASHURST, J., in *Milward* agt. *Thatcher* (*supra*), and upon the assumed facts that if the clerk fell sick the presence of the deputy would be indispensably necessary to perform their duties in the court; that the statutes contemplated the existence of duties requiring the presence of both clerk and deputy for their effectual performance; that the duties of one office required the relator's presence in Albany, and of the other in New York, while both were to be discharged in person.

As to the case of *Milward* agt. *Thatcher*, the construction placed upon it by the English courts, and the weight it is entitled to, are discussed above. As to the contingency of the clerk falling sick, leaving no one to perform the duties of deputy clerk, it might arise in every case where duties are either personal or delegated; but can hardly, in the latter

case, be urged as a reason why the officer and the deputy must always be present to anticipate each other's illness or incapacity to act personally in performance of the duties of the office. No officer could in that case ever absent himself or hold another office, even while he had a deputy. Nothing in the language of the statute seems to me to intend that there are any duties for clerk and deputy to perform jointly, or requiring the presence of both. It would rather seem that the creation of the two offices, to perform duties which the incumbent of either can fulfill, contemplates the contingency of the occasional absence of one of them.

Finally, no duties can require personal performance in every instance by any officer when another person is clothed by law with full authority to perform them.

It is with diffidence and reluctance a conclusion is here reached differing from the views of the learned justice of the supreme court; but it has been my advantage to hear counsel discuss with care and elaboration the particular point in controversy. So far as the propriety of any two offices, compatible or incompatible, being ever held by one person at the same time is concerned (save in possible exceptional cases of extreme importance, where the interests of the state temporarily demand special experience and ability), it is impossible not to see the force of Coke's opinion, that it were better they should not be, as tending to the greater honor and dignity of office and greater benefit to the public. But my views as to the propriety cannot affect the law as I find it; and I must conclude that the relator did not vacate his local office by accepting that of member of the legislature.

The return is insufficient, and mandamus must issue.