THE PEOPLE *ex rel.* Daniel Dinneen, Appellee, *vs.* EDGAR F. BRADFORD, Mayor, *et al.* Appellants.

*Opinion filed April 22, 1915.*

1. FEES AND SALARIES—*right to salary is attached to and follows the legal title to the office.* The right to the salary is attached to and follows the legal title to the office; and this is true irrespective of the question by whom the services were, in fact, actually rendered.

2. SAME—*salary of commissioner of a city is not dependent upon services performed.* The fact that the duties of one of the commissioners ·in a city under the commission form of government may have been performed by the other commissioners or by an interloper or intruder does not preclude such commissioner's right to receive his salary, as section 30 of the act concerning the commission form of government cannot be construed as making the salary of the commissioner dependent upon services performed.

3. SAME—*mere neglect of duties does not constitute abandonment of office.* Mere neglect on the part of a municipal officer to perform his official duties, without any affirmative action showing an intention to abandon the office, will not operate as an abandonment of the office so as to justify a refusal to pay him his salary.

4. MUNICIPAL CORPORATIONS—*remedy where commissioner neglects to perform his duties.* Where a commissioner in a city under the commission form of government neglects to perform his duties the law provides a' remedy by which the electors may remove him from office; but this power cannot be exercised· by the mayor and the other commissioners, nor can they refuse to pay him his salary.

5. STATUTES—*statute must be construed as a whole.* A statute is not to be construed as so many isolated words, phrases, clauses or sentences but is to be construed as a whole, having reference to the connection in which the words are used and the intention of the legislature as disclosed ·from a consideration of the act in all its parts.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. JOE A. DAVIS, Judge, presiding.

RECTOR C. HITT, for appellants.

BROWNE & WILEY, and JAMES J. CONWAY, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellee, Daniel Dinneen, filed a petition for *mandamus* in the circuit court of LaSalle county against appellants, as mayor, commissioners and city clerk of the city of Ottawa, to compel them, as such officers, to execute and deliver to him warrants for his salary as commissioner of such city for the months of October, November and December, 1912, and January and February, 1913. The petition alleged the city of Ottawa is under the commission form of government, and set up the nomination, election and qualification in April, 1911, of appellant Bradford as mayor, of appellants Campbell, Palmer and Helffrich as commissioners, and of appellant Curtis as city clerk, respectively, of such city, and the nomination, election and qualification of the appellee as commissioner; that on May 1, 1911, they entered upon the discharge of their duties as such officers, and have continued to hold such offices, respectively, since that time. The petition further alleges the population of the city of Ottawa is between 10,000 and 15,000; that the salary of each commissioner is fixed at $900 per year, payable in equal installments of $75 per month, which salary is allowed each month by a vote of the council and paid by warrant, signed by the mayor and clerk, drawn on the city treasurer; that from the time appellee took office, to and including September, 1912, he received a warrant for his salary each month, but that since September, 1912, no salary has been allowed to him or warrant for the same drawn and delivered to him; that the council has refused to allow him his salary for such period of time although repeatedly requested to do so, and has continued to vote to the mayor and the other commissioners their salaries regularly ever since they were inducted into office; that on March 3, 1913, the appellee made a written demand on the council to vote to him his several monthly installments of salary for the month of October, 1912, and each succeeding month, to and including the month of February, 1913,

and that the council refused to pay him any further salary or any part of the installments of his salary in arrears; that appellee since May, 1911, has been, and still is, the duly elected and qualified commissioner of the city of Ottawa and a member of its council, and is entitled to receive the monthly installment of salary of $75 each month. The petition prays that a writ of *mandamus* issue directing the city council, at its next session, to allow and vote to him his salary for the months of October, November and December, 1912, and January and February, 1913, and the mayor and city clerk to issue and deliver to him warrants for such salary, and the council to vote and direct the issuance of warrants to him for the monthly installments of his salary in the future while he continues to hold said office.

The petition was filed on March 7, 1913. On the return day of the summons appellants appeared and filed a general demurrer to the petition, which the court overruled on July 11, 1913. Thereupon appellants filed an answer, two pleas and an additional plea, in which they admit the city of Ottawa is under the commission form of government, the election, qualification and assumption of office by appellants and appellee, and charge that appellee has attended no meeting of the council since August 14, 1912; that he has failed and willfully refused to perform the duties of his office as commissioner since that time and has abandoned his office, and that the council is without authority to allow or vote him such salary or that any salary is due to him. The answer and pleas further allege the adoption of an ordinance apportioning the powers and duties among the several commissioners; that appellee was designated commissioner of the department of streets and public improvements, setting forth in detail the duties of such officer, and charge that appellee did not devote such time to the duties of that department as the nature of the office required nor discharge the duties of such office and make the required reports pertaining to that department;

that in April, 1912, the council made a new assignment of commissioners and assigned appellee to the department of public property, setting forth in detail the duties of that department, and charge that appellee has not discharged any of the duties of such office but willfully neglected the same, and that by reason of such willful neglect he has abandoned such office and his right to his salary as such commissioner.

Appellee filed a general demurrer to the answer and pleas, which the court sustained on July 25, 1913. Appellants elected to abide by their answer and pleas, and judgment was rendered against them awarding the writ, directing the payment to appellee of his salary from October, 1912, to and including the month of June, 1913. Appellants prosecuted an appeal to the Appellate Court for the Second District, where the judgment of the circuit court was affirmed in so far as it related to the salary to and including the month of February, 1913, and reversed as to the allowance from then until June, 1913, but without prejudice to the right of appellee to bring another suit for the installments of salary accruing subsequent to February, 1913. Appellants obtained a certificate of importance and have appealed to this court, and assign as error, first, the affirming of the judgment of the circuit court in so far as it relates to the salary for the months to and including the month of February, 1913; and second, the refusal of the Appellate Court to reverse the judgment and remand the cause, with directions to the circuit court to overrule the demurrer to the answer, pleas and additional plea of the appellants.

The reasons urged in support of the assignment of errors are: (1) That there is no warrant, in law, for allowing to a commissioner a salary where he has not performed and discharged the duties of his office; and (2) that appellee abandoned his office and thereby forfeited his right to his salary and compensation as such officer. These contentions will be considered in the order above indicated.

The law is well settled in this State that the right to the salary is attached to and follows the legal title to the office. This is true irrespective of the question by whom the services were, in fact, actually rendered. (*Mayfield* v. *Moore*, 53 Ill. 428; *Waterman* v. *Chicago and Iowa Railroad Co.* 139 id. 658; *Kreitz* v. *Behrensmeyer*, 149 id. 496; *City of Chicago* v. *Luthardt*, 191 id. 516; *Bullis* v. *City of Chicago*, 235 id. 472.) In *City of Chicago* v. *Luthardt, supra*, it is said: "The legal right to the office carries with it the right to the salary or emoluments of the office. The salary follows the legal title. This doctrine is so generally held by the courts that authorities hardly need be cited." While this rule has been most frequently announced and applied in suits between *de jure* and *de facto* officers over the salary to an office, it is nevertheless a basic principle of law and one of general application. It has been so applied not only in cases of protracted absence and non-performance of duties, (*Bryan* v. *Cattell*, 15 Iowa, 538,) but in cases of actual suspension from office. (*Wardlaw* v. *Mayor of New York*, 137 N. Y. 194; 33 N. E. Rep. 140; *City of Chicago* v. *Luthardt, supra*.) An officeholder may recover the full amount of the salary accruing during the time of his suspension, without any deduction of the amount he may have earned in other employments during that time. (*Bullis* v. *City of Chicago, supra; Fitzsimmons* v. *City of Brooklyn*, 102 N. Y. 536; 7 N. E. Rep. 787.) That the duties of appellee's office were actually performed by some one is disputed. Had they been performed by a mere intruder or interloper, without warrant or authority of law, the right of appellee to recover such salary must be conceded. (*City of Chicago* v. *Luthardt, supra*.) That these duties may have been performed by the other commissioners under a claim of right and lawful authority to do so does not alter the situation. This would be true, also, in the case of a *de facto* officer.

Appellants do not contend that this is not the general rule but insist that by the Commission Form of Government act a radical change in the law on this subject has been made, and that by that act, as stated in appellants' brief, "it was undoubtedly the purpose of the legislature to provide that the officer should have pay for services *performed,* and remedy the abuse of paying salaries when services were *not* performed." This contention is based upon the language of section 30 of the act as amended, (Laws of 1911, p. 144,) and more particularly upon the clause, "and their total and only compensation for the performance of their several and respective duties shall be annual salaries," etc., found in that section, which provides for fixing the maximum amount of salary such officers may receive, the same being fixed on a graduated scale, according to the population of the municipalities in which they serve. But this contention, in so far as it is founded on the language of this particular clause, is based upon a misconception of one of the cardinal rules of statutory construction. A statute is not to be construed as so many isolated words, phrases, clauses or sentences but is to be construed as a whole, having reference to the connection in which the words are used and the intention of the legislature as disclosed from a consideration of the act as a whole and in all its parts. It is the intention of the law-maker that makes the law. (*Hoyne* v. *Danisch,* 264 Ill. 467.) It is an elementary rule that in ascertaining this intention all parts of a statute must be considered together, and not each part, phrase, clause, sentence or section by itself. (36 Cyc. 1131; *Krome* v. *Halbert,* 263 Ill. 172; *Hoyne* v. *Danisch, supra.*) When this act is so construed the legislative intent is clear. Section 30 provides as follows: "The mayor and each of the commissioners shall have an office at the municipal building or rooms, and shall devote such time to the duties of their respective offices as a faithful discharge thereof may require: *Provided,* that in cities of twenty

thousand (20,000) population and over the mayor and commissioners shall devote at least six hours daily to the performance of their official duties; and their total and only compensation for the performance of their several and respective duties shall be annual salaries, which shall be fixed by the council and which shall not exceed as follows, to-wit: * * * Where the population is over 10,000 and not over 15,000 the annual salary of the mayor may be $1200, and of each commissioner $900. * * * All such annual salaries shall be payable in equal monthly installments, and where the number of inhabitants is referred to in this section, it shall mean the number of inhabitants according to the Federal, State, city or village census last preceding the election of mayor and commissioners." When this language is read in connection with the other provisions of the section it becomes at once apparent that what the legislature had in mind was the prohibiting of such officers from receiving any additional or other compensation than that fixed by the council, and which in no event should exceed the maximum amount mentioned in the section. The language used is well adapted for the expression of such intention. The words, "and their total and only compensation for the performance of their several and respective duties shall be annual salaries, which shall be fixed by the council and shall not exceed as follows," etc., are wholly inconsistent with any other construction. That by this language the legislature intended to make the right to salary dependent upon and be in proportion to the services performed is negatived by the provisions that the commissioners shall be paid "annual salaries" and that the same "shall be payable in equal monthly installments." Such provisions are wholly irreconcilable with the idea that the right to such salary is also to depend upon the number of hours of service and to be calculated upon a *per diem* basis.

Neither do we attach to the words, "only compensation for the performance of their several and respective duties,"

the importance for which counsel for appellants contends. Words of similar and like import are frequently found in constitutions and statutes and have never been held to make the right to the salary depend upon the actual performance of the duties of the office by the holder of the legal title to such office. (*Mayfield* v. *Moore,* and cases cited *supra*.) Thus, in section 9 of article 10 of the constitution it is provided that certain county officers therein named "shall receive as their only compensation for their services, salaries to be fixed by law," etc., but this provision has never been held to make the right to the salary dependent upon the actual performance of the duties by the holders of the legal title to such offices. On the contrary, it has repeatedly been held to be a limitation as to the amount of salary which such officers can receive for the performance of their official duties. (*Jones* v. *O'Connell,* 266 Ill. 443.) The words "for their services" mean, for the entire and complete performance of the official duties. *Erie County* v. *Jones,* 119 N. Y. 399; 23 N. E. Rep. 742.

In the light of the decisions and the plain intent and meaning of the statute as gathered from a consideration of the act in all its parts, we are convinced that by the language used in section 30 the legislature intended to do no more than fix the maximum amount which any such officer might receive in the way of salary and emoluments while he held such office.

Appellants further insist that appellee abandoned his office and thereby forfeited his right to the salary as such officer. This contention, however, is not based upon any affirmative action on the part of appellee evincing such intention, but rests solely upon the charge that he willfully neglected and omitted to discharge the duties appertaining to such office. The theory of appellants is that the neglect and failure of appellee to perform and discharge the duties of his office *ipso facto* worked an abandonment of the office and extinguished his title thereto. The authorities cited in

support of this proposition, however, do not sustain the contention. They were all direct proceedings by *quo warranto* to try the title to office, and but one of them (*People v. Hanifan,* 96 Ill. 420,) ever reached and was considered by this court. In that case this court held that it was the acceptance of an incompatible office, and not the neglect and failure to attend to the duties of the office, that constituted the abandonment of the former office. It was there said: "An officer in a municipal corporation may, of course, resign his office, or he may abandon it by removal or otherwise, which will be treated, in law, as an implied resignation. * * * One of the modes by which a member of a corporation may be said to impliedly resign his office is by being elected to and accepting an office incompatible with the duties of his former office. That is precisely the case here. Long before the injunction writ was served upon him Roewe had ceased to act as alderman of the second ward under the special charter and had assumed to act as alderman of such ward under an organization supposed to have been effected under the general law. He could not consistently hold both positions, and as he acted in the latter position it is not unreasonable to treat him as he treated himself,—as no longer an alderman under the special city charter. What he did was, in law, equivalent to a resignation of his office as alderman, and the vacancy could rightfully be filled by election of defendant, as was done." Such is not the case here, and the cases referred to are therefore neither in point nor decisive of the question under consideration here.

That mere neglect of official duties, without affirmative action showing an intention to abandon the office, will not operate as a forfeiture of the office and create a vacancy therein seems to be generally conceded by the authorities. Throop, in his work on Public Officers, (sec. 500,) says: "The right of an officer to his fees, emoluments or salary is such, only, as is prescribed by statute, and while he holds

the office such right is in no way impaired by his occasional
or protracted absence from his post or neglect of his duties.
Such derelictions find their correction in the power of re-
moval, impeachment and punishment provided by law. The
compensation for official services is not fixed upon any mere
principle of a *quantum meruit,* but upon the judgment and
consideration of the legislature as a just medium for the
services which the officer may be called upon to perform."
And in *Bryan* v. *Cattell, supra,* the court held that the neg-
lect of an officer to discharge the duties of an office, where
the statute creating the office and fixing the salary makes
no provision for a deduction of the salary on account of
absence or the neglect of official duties, will not work an
abandonment of the office and a forfeiture of the salary by
the holder of the legal title. It was there said: "But it is
suggested that plaintiff, during the whole time for which
this entry is claimed, was absent from the State and failed
and neglected to discharge any of the duties of his office.
* * * It seemed to us the dictate of reason and good
conscience that the State should not be required to pay for
services never rendered; that public officers should be paid
their salaries when, and only when, they discharge the du-
ties imposed upon them by law. * * * It must be re-
membered, however, that we are dealing with a practical
and not an abstract question. And, practically, the diffi-
culty in the view suggested is that it would be impossible
to tell where the true line should be drawn; that is to say,
how long an absence from official duties—how great a de-
linquency—shall work a forfeiture of salary. In the ab-
sence of statute, shall it be one day, or one week, or one
month, or one year? Where shall faithfulness end and de-
linquency begin? Add to these conditions the fact that it
is frequently impossible to tell to what extent the services
of officers were necessary at the time covered by the sup-
posed delinquency, and the propriety of the rule which en-
titles the officer to his salary so long as he remains in office

becomes reasonably manifest. The better and safer rule doubtless is, that if he is, in point of law, actually in office he has a legal right to the salary pertaining to it. His conduct may be such as to render him liable to removal, but when the statute makes no deduction for absence or neglect of duty and the State takes no step as a consequence of such absence or delinquency, we suppose it is the legal right of the officer to demand the full salary allowed him by law." Such seems to be the trend of the authorities in this country. Thus, in *State* v. *Harrison,* 113 Ind. 434, (16 N. E. Rep. 384,) it is said: "An office is not vacant so long as it is supplied, in the manner provided by the constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it. * * * When an office has been conferred upon one legally eligible and has been accepted, no vacancy can be said to exist therein until the term of service and right to hold, as fixed by the law, expires, or until the death, resignation or removal of the person elected or appointed.—*Johnson* v. *Wilson,* 2 N. H. 202; 9 Am. Dec. 50."

The law has provided a remedy where an officer willfully neglects or refuses to perform and discharge the duties of his office, but that remedy is not by a deduction from his salary while he is still holding the legal title to the office. Neither has the legislature delegated this power to the mayor and other commissioners, to be exercised arbitrarily by them. The act providing for the election of commissioners provides the method by which such officers may be recalled and removed from office. (Hurd's Stat. 1913, p. 311.) This power, however, has not been delegated to the other commissioners or the council but has been expressly reserved to the electors themselves, and under the well established rule that the express mention of one thing is an exclusion of all others, it would seem that where a person has once been elected to office by the people he can only be removed therefrom in the manner provided by that

act. That the commissioners were not to exercise this power is also clearly shown by the provisions of sections 25, 27, 28 and 29 of the act, by which the council is given the power to create, fill and discontinue certain offices and discharge the heads of all principal departments and officers and employees appointed by it, subordinate to the superintendents of departments, who are the commissioners themselves. The express designation of the officers and employees which the council may remove and the express exemption of the commissioners from such class also clearly show that the power of removal of duly elected commissioners was not intended to be vested in the mayor and council of such cities under that act. That the commissioners have so understood their powers to be limited we think is clear from the fact that while, as a defense in this case, they interposed the claim that appellee abandoned his office, they have never taken that attitude in their official capacity as such commissioners and attempted to appoint another person to fill such alleged vacancy in the office under the powers conferred upon them by section 11 of the act, which provides that if a vacancy occurs in the office of the mayor or commissioners "the remaining members of said council shall, within thirty days after such vacancy occurs, appoint a person to fill such vacancy during the balance of the unexpired term."

As there is nothing in the record to show that there is a vacancy in the office of commissioner to which appellee was elected or that he has been disqualified or removed from such office in the manner provided by law, we are constrained to hold that he is still the legally elected and qualified holder of the office of commissioner of the city of Ottawa, and as such officer is entitled to receive the salary and emoluments of such office.

For the reasons given, the judgment of the Appellate Court will be affirmed.                *Judgment affirmed.*