## COMMONWEALTH *vs.* NATHAN M. HAWKES.

Essex. Nov. 7, 1877. — Jan. 1, 1878. MORTON & SOULE, JJ., absent.

A special justice of a police court is a "judge of any court of this Commonwealth (except the Court of Sessions)" within the eighth article of amendment of the Constitution, and therefore cannot at the same time have a seat in the House of Representatives.

Such a judge, as the eighth article of amendment of the Constitution of the Commonwealth declares shall not have a seat in the House of Representatives, legally vacates his judicial office by accepting a seat in the House, and, if he continues to exercise the functions of a judge, may be ousted by an information in the nature of a quo warranto.

INFORMATION, filed July 9, 1877, by the attorney general in behalf of the Commonwealth, alleging that in the city of Lynn, in the county of Essex, there was and long had been established a police court; that said police court consisted of one standing justice and of two special justices; that on January 15, 1867, Nathan M. Hawkes of said Lynn was duly appointed and commissioned a special justice of said police court, and since said January 15 had acted as such special justice; that he was duly elected a member of the House of Representatives of the Commonwealth for the year 1877, and on Wednesday, January 3, 1877, took his seat as a member of the House of Representatives, in accordance with his election, and had ever since and still held his seat in the House of Representatives; that by reason thereof he ceased to be a special justice of said police court, yet he had ever since that day continued to act and still acted as special justice of said court; and concluding as follows: "Wherefore said attorney general giveth the court to understand and be informed that said Hawkes, without any legal warrant or right whatever, is in the use and exercise of said office of justice of the police court in the city of Lynn, and has usurped the same, in contempt of said Commonwealth, and against the peace and dignity of the same. Whereupon said attorney general for said Commonwealth prayeth the consideration of the honorable

court here in the premises, and that due process of law may be awarded against him, said Nathan M. Hawkes, in this behalf, to make him answer to the Commonwealth, and show by what authority he claims to have, use and enjoy the office aforesaid."

It was thereupon ordered that notice be given to the defendant to appear on a day named and show cause why the prayer of the information should not be granted.

The defendant appeared and filed a demurrer to the information; and the case was reserved by *Lord*, J., for the consideration of the full court on the information and demurrer.

*R. E. Harmon*, for the defendant. 1. A justice of a police court is not a judge of any court, within the meaning of the eighth article of amendment of the Constitution. In 1821, the time of the adoption of the amendment, there were no police courts in the Commonwealth. The act then applied only to the Supreme, Common Pleas and Probate Courts. The Court of Sessions, excepted in the amendment, had jurisdiction of matters formerly within the jurisdiction of the Court of Common Pleas. The amendment applies only to superior courts of judicature, of which the Probate Court is one. The jurisdiction of police courts is substantially that then exercised by justices of the peace; and is not within the amendment.

2. A special justice is not a judge of the court. He may act under certain circumstances, as a coroner may serve a writ, but the one is not a sheriff nor the other a judge. In certain contingencies he can act in place of the justice, but he is not a justice, even in name.

3. The offices are not incompatible at common law. Judges of the highest courts have always sat in at least one House of Parliament. They are not made so in terms by the eighth article of amendment of the Constitution, but a seat in either House of the Legislature is denied specifically. The eighth article of amendment made very considerable changes in the law as to incompatibility and plurality of offices, so that the law before that time affords no guide to the meaning of the amendment. The article contains two provisions: The first relates to state offices, and provides that certain officers, including United States officials, over whose tenure of office it can exercise no control, shall not hold certain state offices, over which it has full con-

trol. The second relates to state officers accepting certain United States offices, and provides that they shall not continue to hold the state offices, but the acceptance of the national offices shall be deemed a resignation of the state office. The first provision alone concerns this case. Can the words "shall not hold," in case of a United States official, receive their literal sense, and in case of a judge receive a constructive meaning precisely opposite to the literal one? Shall the plain penalty of the law be always evaded by creating a constructive vacancy? The second clause of the amendment forcibly suggests that the first clause was to receive its literal sense, since it vacates the first office only when it has no control over the second. Again, the eligibility of a member to his seat is more easily, naturally and readily determined than the right to the other offices. The construction that the seat is invalid has been held many times under this amendment and the constitutional provisions in force before it. Mass. Election Cases, (ed. 1853) 28–30, 251.

*W. C. Loring,* Assistant Attorney General, (*C. R. Train,* Attorney General, with him,) for the Commonwealth.

GRAY, C. J. The decision of this case depends upon the construction and effect of that provision of the eighth article of amendment of the Constitution of the Commonwealth, adopted by the people in 1821, which declares that "no judge of any court of this Commonwealth (except the Court of Sessions) " "shall at the same time hold the office of Governor, Lieutenant Governor, or councillor, or have a seat in the Senate or House of Representatives of this Commonwealth."

The Court of Sessions never had any jurisdiction of civil actions; the criminal jurisdiction which it formerly had was transferred in 1804 to Courts of Common Pleas; and its functions, at the time of the adoption of the constitutional amendment, were principally administrative, as the agent and representative of the county in all matters touching its finances and general prudential concerns, such as the allowance and settlement of county accounts, the estimate and apportionment of county taxes, the erection and repair of county buildings, the granting of licenses, the laying out, altering and discontinuing of highways, the establishment and regulation of ferries, and generally exercising such powers as have since been vested in county com-

missioners.　Sts. 1803, *c.* 154; 1807, *c.* 57; 1818, *c.* 120; 1819, *c.* 139; 1827, *c.* 77.　Rev. Sts. *cc.* 14, 26.　Gen. Sts. *cc.* 17, 47, *Hampshire* v. *Franklin,* 16 Mass. 76, 88.　*Commonwealth* v. *Holmes,* 17 Mass. 336.　*Fay, petitioner,* 15 Pick. 243.　*Dearborn* v. *Ames,* 8 Gray, 1, 14.

At that time, the strictly judicial power was distributed among other courts and magistrates.　Justices of the peace had criminal jurisdiction of simple assaults and batteries, and civil jurisdiction of actions in which the debt or damages demanded did not exceed twenty dollars.　Sts. 1783, *c.* 51; 1807, *c.* 123. The Courts of Common Pleas had jurisdiction of most other civil actions, with a right of appeal, on fact as well as law, to this court whenever the debt or damages demanded exceeded seventy, or, afterwards, one hundred dollars.　Sts. 1811, *c.* 33; 1813, *c.* 173; 1817, *c.* 185; 1820, *c.* 79.　The jurisdiction of all crimes, except simple assaults and perhaps some other petty offences, was in this court, or in the Courts of Common Pleas, or in the Municipal Court of Boston.　Sts. 1782, *c.* 9; 1799, *c.* 81; 1803, *c.* 154; 1807, *c.* 57; 1812, *c.* 133; 1820, *c.* 79. *Commonwealth* v. *Knowlton,* 2 Mass. 530.　*Commonwealth* v. *Johnson,* 8 Mass. 87.　*Commonwealth* v. *Holmes,* 17 Mass. 336, 340.　*Commonwealth* v. *White,* 8 Pick. 453.　*Brien* v. *Commonwealth,* 5 Met. 508, 513, 514.

In the light of these facts, we cannot doubt that the intention of the Constitution, as amended, was to exclude the judges of all organized courts, established to administer the judicial power of the Commonwealth, from sharing in the exercise of the supreme legislative or executive power.

Police courts were created after the adoption of the constitutional amendment in question, and were at first vested with the same criminal and civil jurisdiction as justices of the peace.　St. 1821, *c.* 109, §§ 2, 6.　Rev. Sts. *c.* 87, §§ 1, 3, 11, 32, 34.　St. 1849, *c.* 86.　The courts thus established were organized judicial tribunals, having attributes and exercising functions independently of the magistrates designated to hold them, and were thus distinguished from justices of the peace, on whom personally certain judicial powers are conferred by law; and the judges of such courts must by the Constitution be appointed during good behavior, instead of for seven years, as in the case of jus-

tices of the peace. *Opinion of Justices,* 3 Cush. 584. *Gladhill, petitioner,* 8 Met. 168, 170. *Bannegan* v. *Murphy,* 13 Met. 251. The inevitable conclusion is that each of these courts is a court of this Commonwealth other than the Court of Sessions, within the meaning of the amendment of the Constitution.

This conclusion would be confirmed, if necessary, by the consideration that, by later statutes, all police courts have been vested with jurisdiction, concurrently with the Superior Court, of many crimes, and of all personal actions and proceedings in civil cases in which the amount demanded or the value of the property claimed does not exceed three hundred dollars, and so exercise at the present day a considerable portion of the judicial power which in 1821 was vested in the Courts of Common Pleas or in the Municipal Court of Boston. Gen. Sts. *c.* 116, §§ 13, 14. St. 1871, *c.* 144.

A special justice of a police court holds his office by the like appointment and tenure as the standing justice, and, in case of his absence or disability, or at his request, may hold a session and exercise all the powers of the court, and is in every sense a judge thereof. Gen. Sts. *c.* 116, § 22. *Dike* v. *Story,* 7 Allen, 349. *Commonwealth* v. *McCarty,* 14 Gray, 18.

The defendant therefore could not lawfully hold at one and the same time the office of a special justice of the Police Court of Lynn and a seat in the House of Representatives ; and the remaining question in the case is, which of these two public trusts he lawfully held, after unlawfully attempting to hold both. If he did not lawfully hold a seat in the House, he could be unseated only by the House itself, which is by the Constitution the final judge of the elections, returns and qualifications of its own members. Const. Mass. *c.* 1, § 3, art. 10. But if he unlawfully holds a judicial office, this proceeding by information in behalf of the Commonwealth is the proper process to oust him from the office which he occupies *de facto,* but to which he has no legal right. *Fowler* v. *Bebee,* 9 Mass. 231, 235. *Commonwealth* v. *Fowler,* 10 Mass. 290, 301. *Sheehan's case,* 122 Mass. 445. *Answer of Justices,* 122 Mass. 600, 604.

By the common law, when two offices or public trusts are incompatible with each other, a person holding the one is not disqualified to be appointed or elected to the other, but his ac-

ceptance of the second office is in law an implied resignation of the first, whenever it may be resigned by the mere act of the incumbent, without the assent or concurrence of a superior authority. *Milward* v. *Thatcher*, 2 T. R. 81. *The King* v. *Hughes*, 5 B. & C. 886; *S. C.* 8 D. & R. 708. *The King* v. *Tizzard*, 9 B. & C. 418; *S. C.* 4 Man. & Ry. 400. *The King* v. *Patteson*, 4 B. & Ad. 9; *S. C.* 1 Nev. & Man. 612. *Worth* v. *Newton*, 10 Exch. 247. *People* v. *Carrique*, 2 Hill (N. Y.) 93. *People* v. *Nostrand*, 46 N. Y. 375, 381. *Stubbs* v. *Lee*, 64 Maine, 195. *Commonwealth* v. *Kirby*, 2 Cush. 577. There may be municipal or county offices that a person cannot decline to accept, and therefore has no right to resign at his own will. But under the Constitutions of the United States and of this Commonwealth, at least, a judicial office, depending upon the appointment of the Executive, no person is obliged to accept, or to hold longer than he pleases, but has the absolute right to resign at any time. *United States* v. *Wright*, 1 McLean, 509.

It follows that the defendant, by taking the seat to which he had been elected in the House of Representatives, legally vacated his judicial office, unless there is something in the Constitution itself which controls the general law. Upon examination of all the provisions of the Constitution on the subject, we are of opinion that they affirm, rather than reverse or qualify, the rule of the common law as applicable to the case. In order to make the discussion intelligible, it is necessary to recite those provisions.

The original Constitution of the Commonwealth, adopted in 1780, contains, in *c.* 6, art. 2, the following provisions as to incompatibility of offices:

"No Governor, Lieutenant Governor, or Judge of the Supreme Judicial Court, shall hold any other office or place under the authority of this Commonwealth, except such as by this Constitution they are admitted to hold, saving that the judges of the said court may hold the offices of justices of the peace through the state; nor shall they hold any other place or office, or receive any pension or salary from any other state or government or power whatever.

"No person shall be capable of holding or exercising at the same time, within this state, more than one of the following

offices, viz. judge of probate, sheriff, register of probate or reg-
ister of deeds; and never more than any two offices which are to
be held by appointment of the Governor, or the Governor and
Council, or the Senate, or the House of Representatives, or by
the election of the people of the state at large, or of the people
of any county, military offices and the offices of justices of the
peace excepted, shall be held by one person.

" No person holding the office of Judge of the Supreme Judi-
cial Court, secretary, attorney general, solicitor general, treasurer
or receiver general, judge of probate, commissary general, presi-
dent, professor or instructor of Harvard College, sheriff, clerk
of the House of Representatives, register of probate, register of
deeds, clerk of the Supreme Judicial Court, clerk of the inferior
Court of Common Pleas, or officer of the customs, including in
this description naval officers, shall at the same time have a seat
in the Senate or House of Representatives; but their being
chosen or appointed to, and accepting the same, shall operate
as a resignation of their seat in the Senate or House of Repre-
sentatives, and the place so vacated shall be filled up.

" And the same rule shall take place in case any Judge of the
said Supreme Judicial Court, or judge of probate, shall accept a
seat in Council, or any councillor shall accept of either of
those offices or places."

The whole of the eighth article of the amendments adopted
in 1821 is as follows : " No judge of any court of this Common-
wealth (except the Court of Sessions) and no person holding
any office under the authority of the United States (postmasters
excepted) shall at the same time hold the office of Governor,
Lieutenant Governor, or councillor, or have a seat in the Senate
or House of Representatives of this Commonwealth; and no
judge of any court in this Commonwealth (except the Court of
Sessions) nor the attorney general, solicitor general, county at-
torney, clerk of any court, sheriff, treasurer and receiver general,
register of probate, nor register of deeds, shall continue to hold
his said office after being elected a member of the Congress of
the United States, and accepting that trust; but the acceptance
of such trust, by any of the officers aforesaid, shall be deemed
and taken to be a resignation of his said office; and judges of
the Courts of Common Pleas shall hold no other office under the

government of this Commonwealth, the office of justice of the peace and militia offices excepted."

It is manifest that none of these provisions make the holder of one office or trust, of the class first mentioned in each clause, ineligible, in the strict sense, that is, incapable of being elected or appointed to an office or trust of the other class; for the Constitution never says that such a person shall be ineligible, or shall be incapable of being, or disqualified to be, elected or appointed, but that he shall not "hold," or "continue to hold," or "be capable of holding or exercising" a certain office or trust, or "have a seat" in the Senate or House. It was accordingly decided by the House of Representatives in 1800 that a judge of probate, who resigned his judicial office after being elected a representative and before the meeting of the Legislature, was qualified to take his seat in the House. *Case of Sullivan*, Mass. Election Cases, (ed. 1853,) 39.

In no case does the Constitution provide that the acceptance of the second office or trust shall be void, and the incumbent shall continue to hold the first. But whenever anything is said as to which office or trust a person shall hold, who, already holding one, accepts another incompatible with it, it is, in accordance with the rule of the common law, that such acceptance "shall operate as" or "shall be deemed and taken to be a resignation" of the first. Nor can any implication arise, from the expression of this rule in some cases, that a different rule is intended where none is expressed; because in every case, in which the rule of the common law is recognized, there was special reason for the introduction of the clause that contains such recognition.

In that part of the original Constitution, for instance, which, after declaring that no person holding the office of judge of this court, or either of certain other offices therein enumerated, shall at the same time have a seat in the Senate or House of Representatives, adds, "but their being chosen or appointed to, and accepting the same, shall operate as a resignation of their seat in the Senate or House of Representatives, and the place so vacated shall be filled up," the purpose of the addition would appear to have been to make it clear that the Senate or House might issue a precept for a new election to fill the vacancy; and such imperfect notes as have come down to us of the Debates in the Con-

vention which framed the Constitution support this view. Journal of Convention of 1779–80, pp. 81, 139, 144, 162, 166. That, without such a provision, the right to issue a new precept might be considered doubtful is evident from the *Opinion of the Justices*, 3 Pick. 517.

The further provision, " And the same rule shall take place in case any Judge of the said Supreme Judicial Court or judge of probate shall accept a seat in Council, or any councillor shall accept of either of those offices or places," was apparently intended to remove any doubt as to whether a seat in the Council should be considered as an " office or place," within the meaning of the first paragraph of the same article, and to declare in the clearest terms the incompatibility of the office of judge of probate, as well as of the office of judge of this court, with a seat in the Council, and thus cure the evil that had prevailed under the Province Charter, when Thomas Hutchinson was at one time Lieutenant Governor and a member of the Council (then also a branch of the Legislature) as well as Chief Justice of the Superior Court of Judicature and Judge of Probate for the county of Suffolk. Quincy, 242–244, 426 note. 2 John Adams's Works, 124, 151.

The eighth article of amendment is in the nature of an addition to the article of the original Constitution on the subject of incompatibility of offices. Its objects, as apparent from its terms, and as stated by Mr. Webster in bringing it before the Convention which submitted it to the people, were, 1st, to extend the disqualification of judges to sit in the Legislature or the Council (which had been previously limited to judges of this court and judges of probate) to judges of other courts ; 2d, to prevent the holding by the same person at the same time of important offices or trusts under the state government and under the Constitution of the United States, which had been established since the adoption of the Constitution of the Commonwealth ; 3d, (which is not material to the present inquiry,) to restrict the number of offices that might be held by judges of the Courts of Common Pleas. Debates in Convention of 1820 (ed. 1853) 124, 187.

The express declaration, in this article of amendment, that the acceptance of the trust of a member of Congress, by any of

the state officers mentioned, " shall be deemed and taken to be a resignation of his said office," may well have been inserted to make it manifest that the Commonwealth did not assume to deal with the right to a seat in Congress, the qualifications for which are defined by the Constitution of the United States. And the omission of a corresponding declaration in the earlier part of the same article would seem to have been dictated by the same spirit, in order to avoid saying, what the Commonwealth would have no power to enforce, that an office under the authority of the United States should be vacated by holding an office or seat in the state government.

The cases cited in the defendant's behalf, in which persons holding offices under the United States have not been allowed by the Massachusetts House of Representatives to hold seats therein, do not, giving them the fullest weight, tend to support his position.   All of them but one were decided before the Constitution of the Commonwealth contained any provision as to the incompatibility of national with state offices ; and in none of them did it appear that the office under the United States was accepted first, except in the case of David Sewall, then Judge of the District Court of the United States for the District of Maine, as to whom the question was raised and decided in 1790, upon his appearing to take his seat as a member of the House; so that it is evident that the point was whether, without resigning his judicial office, he could hold a seat in the House of Representatives, in the absence of any constitutional provision upon the subject.   Mass. Election Cases, 28–30, 251.

On the other hand, the words in question have practically re ceived, as applied to the highest offices of the Commonwealth, the construction that we adopt.   Mr. Justice Sumner under the Constitution of 1780, and Justices Lincoln and Morton since the adoption of the amendment of 1821, were elected to and accepted the office of Governor, while holding the office of a justice of this court, and were recognized by the whole people of the Commonwealth as having lawfully assumed its chief executive office.   Mr. Justice Morton certainly resigned his judicial office in no other way than by accepting the office of Governor. 1 Met. 1.   And it may fairly be presumed that his action was in accordance with that of his predecessors in similar cases.

*Demurrer overruled.*