JAMES WOODSIDE, in error, *vs.* GEORGE W. WAGG.

Cumberland.   Opinion May 28, 1880.

*Municipal court of Brunswick—jurisdiction of.   Vacancy in the office
of judge.   Judge de facto.*

Under special laws 1874, c. 565, the municipal court for the town of Brunswick has jurisdiction of the process of forcible entry and detainer where both parties live in that town, and the land is situated therein, and the damages alleged do not exceed fifty dollars.

The office of judge of that court would be vacated by the incumbent taking a seat as a member of the legislature, and his authority as a judge *de jure* would cease; still, if he continued peaceably to act under his commission and to exercise the functions of a judge, with the usual insignia of his office, he would be an officer *de facto*, and with reference to the public and third persons, his acts, including judgments rendered by him in cases within the jurisdiction of the court, would be valid.   But he might be removed upon information filed against him in behalf of the State.

ON EXCEPTIONS.

ERROR to reverse a judgment of the municipal court for the town of Brunswick.

The case comes to the law court on exceptions by the plaintiff in error.   The material facts appear in the opinion.

*H. Orr*, for the plaintiff in error.

Error is the only efficient remedy in this case.   *Jewell* v. *Brown*, 33 Maine, 250.

When the judge of the municipal court of Brunswick, qualified as a member of the legislature, he vacated his office as judge. Constitution, art. 3, § § 1, 2; art. 9, § 2.

By the act establishing the court, 1850, c. 195, § 11, it is provided in case of vacancy in the office of judge, that a justice of the peace, residing in Brunswick, may perform all the duties appertaining to the office of justice of the peace, during the continuance of such vacancy. This is saved in the repealing act of R. S., 1857, § § 2, 3; 1871, § § 1, 2. Then at the time of the judgment, justices had jurisdiction of forcible entry and detainer in Brunswick, when damages claimed did not exceed twenty dollars.

The municipal court of Brunswick, if the judge was authorized to act, had no jurisdiction in this case, where damages claimed were fifty dollars. See private laws, 1874, c. 565; stat. 1868, c. 151, § 5; Stearns, R. P., c. 1, § 1.

*Weston Thompson,* for the defendant in error.

SYMONDS, J. This is a writ of error to reverse a judgment rendered in the municipal court for the town of Brunswick. The rulings at *nisi prius* were against the plaintiff in error, exceptions were taken, and in support of the exceptions the argument relies upon one essential ground, variously stated in several of the assignments of error. It is insisted that the judgment is erroneous, because before it was rendered the judge of that court had vacated his office by accepting an election to the legislature, and by qualifying and acting as a member of that body. By that fact, it is claimed, the judge ceased to hold his office, became a member of the legislative, and could not be at the same time of the judicial department, and any judgment subsequently rendered by him was necessarily without jurisdiction and erroneous.

Independently of this claim, it is urged that, even if the authority of the judge had not expired, the court did not have jurisdiction of an action, involving the title to real estate, where the damages claimed exceeded twenty dollars. But we think the jurisdiction of the court was clear under the special laws of 1874, c. 565. Both the parties resided, and the land was situated, in Brunswick,

and the terms of that act gave the court "exclusive jurisdiction in all cases of forcible entry and detainer in said town." This is in addition to "concurrent jurisdiction with trial justices, in cases of forcible entry and detainer" in the county, and "also concurrent original jurisdiction with the superior court for the county of Cumberland in all civil actions at law, where the damage demanded does not exceed fifty dollars," when the parties, or one of them and a trustee, are residents of the county.

We have no doubt that under these provisions, and under R. S., c. 94, § 4, the court had jurisdiction of a process of forcible entry and detainer, inserted in a writ, and claiming damage in the sum of fifty dollars, when both parties lived in Brunswick, and the land was there situated.

We recur, then, to the principal inquiry in the case, and the conclusion we have reached upon that will render it unnecessary to consider whether, if the judgment were void, as the plaintiff claims, a writ of error was or was not the appropriate remedy. There is nothing to prevent, and we prefer to decide the main issue, rather than any question of the form of process.

That the two offices, judge of the municipal court and member of the legislature, were incompatible, cannot be denied. Constitution of Maine, art. 9, § 2. *Commonwealth* v. *Hawkes*, 123 Mass. 525.

That to accept and qualify for one of these offices, while holding the other, would be a resignation of the one first held, is a rule already adopted by this court. *Stubbs* v. *Lee*, 64 Maine, 195.

It follows that when Judge Humphreys was qualified as a member of the legislature, his strictly legal authority to act as judge of the municipal court ceased. He was no longer judge *de jure*. If he continued to exercise the functions of a judge, he might have been ousted by an information in the nature of a *quo warranto*. *Commonwealth* v. *Hawkes*, 123 Mass. 525.

But the immediate question under consideration is, what was the character of his acts, as to validity or invalidity, during such continuance in the exercise of the duties of his judicial office, after expiration of the legal tenure. They must be void, unless

they are to be upheld on the ground that a judge holding over, under such circumstances, is to be regarded as an officer *de facto*.

In *State* v. *Carroll*, 38 Conn. 449, after an elaborate review of the English and American cases on this subject, it is said, "the *de facto* doctrine was introduced into the law as a matter of policy and necessity, to protect the interest of the public and individuals, where those interests were involved in the official acts of persons exercising the duties of an office, without being lawful officers. It was seen, as was said in *Knowles* v. *Luce*, Moore, 109, that the public could not reasonably be compelled to inquire into the title of an officer, nor be compelled to show a title, and these became settled principles in the law. But to protect those who dealt with such officers when apparent incumbents of offices under such apparent circumstances of reputation, or color, as would lead men to suppose they were legal officers, the law validated their acts as to the public and third persons, on the ground that, as to them, although not officers *de jure*, they were officers in fact, whose acts public policy required should be considered valid."

On this ground it was held that a justice of the peace, temporarily holding a city court, under a law alleged to be unconstitutional, was at least, under the circumstances of that case, an officer *de facto*, if not *de jure*, and judgments rendered by him were valid.

"An officer *de facto*," the court say, "is one whose acts, though not those of a lawful officer, the law upon principles of policy and justice will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised;

"First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people without inquiry, to submit to, or invoke his action, supposing him to be the officer he assumed to be.

"Second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond and the like.

"Third, under color of a known election or appointment, void, because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public.

"Fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such."

It is clear that the first of these specifications was intended to include the case of an officer holding over after the expiration of his term, or after it has been determined in any other way than by lapse of time, as well as that of one who assumes the office without an original appointment or election. In either case, at the time referred to, the officer is "without a known appointment or election" to uphold his acts. "In the case of public officers, who are such *de facto*, acting under color of office by an election or appointment not strictly legal, or without having qualified themselves by the requisite tests, or *by holding over after the period prescribed for a new appointment*, as in the case of sheriffs, constables, &c.; their acts are held valid as respects the rights of third persons who have an interest in them, and as concerns the public, in order to prevent a failure of justice." 2 Kent. 295.

In a learned note which Judge REDFIELD adds to the opinion, cited from the Connecticut court, Law Register, March, 1873, it is said : "The result of all the cases seems to be that an officer *de facto* is just what the term implies—one who by right, but without having complied with all the formal requisites and qualifications, or else by mistake and misapprehension, or perhaps by downright wrong and gross usurpation, is for the time exercising the functions of the office, and whom from necessity all persons having to do with such functions must employ, and to whose acts all must submit, since he holds the *insignia* of the office, and the power to enforce obedience to his demands." From its statement of the general rule in regard to the validity of the acts of officers *de facto*, the note excludes the cases where the office itself is in conflict, two or more persons claiming to hold it and each denying the authority of the other. To that class of cases, it is unnecessary

for the present purpose to determine what distinct considerations may apply.

In *Wilcox* v. *Smith*, 5 Wendell, 232, it was held that an execution issued by one who had acted as a justice of the peace for three years was a protection to an officer in taking property on it, although there was no proof that the justice came into office under color of an election. "The principle is well settled that the acts of officers *de facto* are as valid and effectual, when they concern the public or the rights of third persons, as though they were officers *de jure*. The affairs of society could not be carried on upon any other principle."

The same rule is held in *Brown* v. *Lunt*, 37 Maine, 423, with a citation of authorities, and discussion of principles which leave very little to be added on the subject.

It is necessary only to add that the precise question under consideration has been recently determined by the supreme court of Massachusetts, in *Sheehan's Case*, 122 Mass. 445, where it is said, "If Mr. Hawkes upon taking his seat in the house of representatives ceased to be a justice *de jure*, he was, by color of the commission which he still assumed to hold and act under, having the usual signs of judicial office—sitting in the court, using its seal and attended by its clerk—and no other person having been appointed in his stead, a justice *de facto*. Upon well settled principles, it would be inconsistent with the convenience and security of the public, and with a due regard to the rights of one acting in an official capacity, under the color of, and a belief in lawful authority to do so, that the validity of his acts as a justice should be disputed, or the legal effect of his election and qualification as a representative be determined in this proceeding to which he is not a party. The appropriate form of trying his right to exercise his office as a justice is by information in behalf of the Commonwealth, or perhaps by action against him by the person injured."

Upon *habeas corpus*, the court refused to release a prisoner committed by the magistrate under such circumstances, although upon information filed, as we have seen—123 Mass. 525—it was

held that the two offices were incompatible, and that by taking his seat in the house of representatives the defendant legally vacated his judicial office.

*Exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.