JOHN F. CORNELL, AUDITOR OF PUBLIC ACCOUNTS, V. FRANK IRVINE.

FILED NOVEMBER 17, 1898.   No. 10232.

1. **State Officers:** AUDITOR OF PUBLIC ACCOUNTS.   An incumbent of a state office, of which the duration and salary are definitely fixed by statute, is not accountable to the auditor of public accounts of the state for the manner in which, as such incumbent, he has discharged the duties of his office.

2. ———: EXTRA SERVICES: COMPENSATION.   Where a state officer has rendered services outside of, and not incompatible with, his duties as such officer, it is not proper for the auditor of public accounts of the state to refuse to issue a warrant in payment of such extra services merely because the said state officer's salary, already paid, was for the period during which the said extra services were rendered.

3. **Commissioner of Supreme Court:** LECTURER BEFORE COLLEGE OF LAW: COMPENSATION.   A statute created the office of commissioner of the supreme court, prescribed his duties, provided his compensation, payable quarterly, and only forbade, during his term, his engaging in the practice of law.   *Held,* That neither upon principle nor upon statutory grounds was such commissioner properly denied compensation for lectures delivered to a law class of the state university, since such extra services were not incompatible with, or included within, the scope of his duties as such commissioner.

ERROR from the district court of Lancaster county. Tried below before HALL, J.   *Affirmed.*

Cases cited by counsel are discussed in the opinion.
46

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for plaintiff in error.

*Frank Irvine* and *M. B. Reese,* for defendant in error.

RYAN, C.

The defendant in error appealed to the district court of Lancaster county from the disallowance of his claim by the auditor of public accounts of this state, and on his appeal secured the allowance sought by him, and the said auditor now seeks to reverse the judgment of the district court by these proceedings in error. Omitting mere formal parts the petition in the district court was in the following language:

"The said Frank Irvine, appellant, for cause of action states:

"1. That the said John F. Cornell is, and for more than a year past has been, the auditor of public accounts of the state of Nebraska, and as such auditor is charged with the duty, among other things, of examining certificates drawn by the regents of the University of Nebraska, and drawing warrants thereon upon the state treasurer for the payment of claims against said university.

"2. That a contract exists, and for many years past has existed, between the said appellant and the said regents whereby the said appellant is engaged to deliver each year, so long as said parties see fit to continue said contract, lectures before the senior class of the College of Law of said university at the agreed compensation of $20 per lecture.

"3. That in pursuance of said contract, and at times fixed by the authorities of said university, the said Frank Irvine did, during the months of February and March, 1898, to-wit, on three successive Wednesdays at 2 o'clock P. M., and on three successive Thursdays at 10:45 o'clock A. M., deliver six lectures before said class, and thereby was entitled to receive from the funds of said university devoted to said college of law the sum of $120.

"4. That there was at all times mentioned, and is now, a specific appropriation by the legislature available and sufficient for the maintenance of said college of law and for the payment of said claims of appellant.

"5. That, as more fully appears from the transcript filed herein, the said board of regents caused to be issued and signed by its secretary and president a certificate that said services had been performed, and that said Frank Irvine was entitled to said sum and directing appellee to draw his warrant upon the state treasurer therefor. Said certificate was duly presented to said appellee, and all things requisite and necessary to require the drawing of said warrant were by appellant and said board of regents done and performed, and it thereby became the duty of said appellee to draw his warrant as aforesaid, directing said treasurer to pay to appellant the sum aforesaid.

"6. That said appellant is, and for five years last past has been, one of the commissioners of the supreme court, and as such commissioner has drawn from the treasury his salary as provided by law, and about the 1st day of April, 1898, drew his salary as such commissioner for the quarter ending the 31st day of March, 1898.

"7. The said appellee examined and rejected said claim and certificate and disallowed the same and refused to draw his warrant therefor, giving as his sole and only reason for such action, in the official notice thereof served on the appellant, that, from certain opinions rendered by the attorney general, he was led to believe that said appellant was not entitled to receive compensation for the services so by him rendered to said university, because he filled such position as commissioner and received salary as such.

"Wherefore appellant prays that the decision of said auditor be reversed and that this court, by its order and mandate, require the appellee to issue his warrant for the sum of $120 as required by law. Appellant also prays

judgment for costs, and such other relief as may be just and lawful."

To the above petition the auditor filed a general demurrer, which was overruled, and, as the auditor elected to stand upon his demurrer, in the further orderly progress of the cause there was judgment as prayed in the petition.

The duties of commissioners of the supreme court, their salaries, and the limitations upon their right to pursue other vocations are found in sections 22e, 22f, and 22g, chapter 19, Compiled Statutes 1897. The salary of each is thereby made equal to that of a judge of the supreme court, his duties are to aid in the performance of the duties of said court in the disposition of the cases therein pending, and during the term of his office he is forbidden to practice law. The contentions on behalf of the auditor are that the defendant in error, by accepting the office of commissioner of the supreme court, engaged to give all of his time during ordinary business hours to the duties of that office, and that with this implied engagement the delivery of lectures to students of the law college during ordinary business hours was incompatible; and, furthermore, that having received compensation as commissioner from the state for his entire time, he is not entitled to compensation from the same source for duties performed during the same time, even though these duties did not pertain to his office as commissioner. In this connection we mention the fact that there was much controversy in argument as to whether there is involved in this proceeding the right to hold two offices, merely to say that, in our opinion, too much stress has been laid on this proposition. As we understand the argument of the attorney general, it is based upon the assumption that to pay the claim of the defendant in error would be opposed to public policy, for the reason that the duty of lecturer is incompatible with that of commissioner, and because the time of the defendant in error, already paid for as commissioner, must, to a

certain extent, be appropriated to his duties as lecturer. In support of this contention there are cited *Commissioners of Montgomery County v. Bromley*, 108 Ind. 156, *State v. Buttz*, 9 Rich. [S. Car.] 156, and *Commonwealth v. Hawkes*, 123 Mass. 525.

In the first of these cases Bromley was township trustee and as such kept open his office for the transaction of business of the township every working day during his term, and for his services on all of said days he was paid out of township funds at the rate of $2 per day. During said official term Bromley performed the duties of overseer of the poor of his township, and for these services in the case decided he claimed compensation from the county. The statutes of Indiana provided that township trustees should be overseers of the poor within their respective townships and should perform all the duties with reference to the poor of such townships. It was also originally provided by the statutes of that state that the overseers of the poor in each township should be entitled to receive $1 per day for each day necessarily employed in the discharge of his duties as such overseer of the poor, to be allowed by the board of commissioners of his county. The same *per diem* compensation was originally allowed to a township trustee while engaged in the performance of his other duties, to be paid out of the township fund. Afterward, in 1879, there was enacted a statutory provision as follows: "The *per diem* of township trustees shall be as follows: For each actual day's service they shall be allowed to be paid, out of the township fund, two dollars; provided that, for all services as overseer of the poor, said township trustees shall be paid out of any funds in the county treasury not otherwise appropriated on the order of the board of county commissioners." In reference to the language just quoted the supreme court of Indiana said: "As a statutory provision that section might, perhaps, have been so framed as better to express the precise legislative meaning intended to be conveyed; but, construed in the light of antecedent

legislation and with reference to the purpose which the
legislature clearly had in view in passing the act of
March 31, 1879, we interpret it to mean that for services
in the ordinary civil and school business of the township
the trustees shall be paid at the rate of $2 per day out
of the township fund, and that for services as overseer
of the poor he shall be paid at the same rate out of the
county treasury, and that separate accounts must be
kept of the amount of each class of services rendered
from time to time. We further interpret the section un-
der consideration to mean that, as applicable to both
classes of service, an allowance of only $2 can be made
for an actual day's service, without reference to the
manner in which the day may have been divided between
the two classes of service; and that, consequently, a
township trustee is not entitled to receive out of any fund
more than $2 for official services performed during one
day." It will be readily seen that the point decided in
the above case was not the same as that which is involved
in this. Under statutes in existence previous to 1879 a
township trustee as such received $1 per day for services,
to be paid out of the township fund; as overseer of the
poor he was entitled to receive from the county $1 per
day for his services as such overseer. The township
trustee was, *ex officio*, overseer of the poor, and hence,
when in 1879 there was allowed $2 per day to township
trustees, this legislation was understood by the court
to evidence a legislative purpose to pay but $2 per day
for services rendered by township trustees, whether ren-
dered as such trustee in strictness, or only *ex officio*.

The scope of the opinion in *State v. Buttz, supra*, is fully
described in the syllabus, which is in this language:
"(1.) A solicitor who accepts the office of representative
in congress thereby vacates his office of solicitor. (2.)
Where one holding an office accepts another which is in-
compatible therewith, he thereby vacates the first. (3.)
There is nothing in the constitution of the state which
abrogates the common-law rule that the same person

cannot hold at the same time two incompatable offices. (4.) The office of state solicitor and member of congress are incompatible with each other." The opinion contains a very full and able exposition of the proposition that the acceptance of an office of which the duties are incompatible with the duties of another office already held, *ipso facto*, vacates the office first held. In the case at bar the question is not whether by lecturing to the law class the defendant in error vacated his office as commissioner of the supreme court, for the incompatibility asserted to exist is not claimed to involve such consequences as in the above case were held to result from certain restrictive provisions of the constitution of South Carolina.

*Commonwealth v. Hawkes, supra,* is governed by the principle which was the pivotal point in *State v. Buttz, supra,* and which has just been held inapplicable to the facts now under consideration.

In addition to the three adjudicated cases just considered the attorney general has referred to 1 Dillon, Municipal Corporations [4th ed.], section 227, but this section we find upon examination to be devoted to the discussion of the vacation of an office already held by the mere acceptance of another incompatible therewith, and throws no new light upon that question.

Having completed an analysis of the cases and views of text-writers cited on behalf of plaintiff in error, we shall now devote our attention to those cited by defendant in error and such others as, with necessarily limited time at our command, we have been able to discover. Introductory to this task it is appropriate to quote something of the views of English jurists with reference to considerations of public policy as applied to judicial investigations.

In *Richardson v. Mellish,* 2 Bing. [Eng.] 229, Burrough, J., said: "I, for one, protest, as my lord has done, against arguing too strongly upon public policy:—it is a very unruly horse, and when once you get astride it you never know where it will carry you. It may lead you from

the sound law. It is never argued at all, but when other points fail."

In *Davies v. Davies*, 36 L. R. Ch. D. [Eng.] 364, after having approvingly quoted the saying of Burrough, J., that "public policy is a very unruly horse, and when once you get astride it you never know where it will carry you," it was added that "Public policy does not admit of definition and is not easily explained."

With these cautionary remarks in mind we shall now state rather what is held by the courts than try to formulate any general principle to be upheld by authority.

In *United States v. Ripley*, 7 Pet. [U. S.] 18, it was held that though General Ripley had been receiving the pay and emoluments of an army officer, he was entitled to payment for services in preparing plans of fortifications, procuring and forwarding supplies, etc., such services not being within the line of his duties.

In *United States v. Fillebrown*, 7 Pet. [U. S.] 28, the first paragraph of the syllabus is as follows: "The United States instituted an action to recover a balance certified at the treasury, against the defendant, on the settlement of his accounts as secretary to the commissioners of the navy hospital fund. Upon this settlement, the defendant set up a claim for compensation, for what he considered extra services, in bringing up and arranging the records of the board, antecedent to his appointment as secretary; and also for commissions on the disbursement of moneys under the orders of the board. These claims were rejected by the accounting officers of the treasury and were, on the trial, set up by way of set-off against the demand on the part of the United States. Held, that the allowance of compensation by a fixed salary to the defendant, as the secretary of the board of the navy hospital commissioners, did not exclude his right to claim extra compensation for the disbursement of moneys belonging to the navy hospital fund."

In *United States v. Saunders*, 120 U. S. 126, it was held that a clerk in the office of the president of the United

States who was appointed clerk of a committee of congress and performed the duties of both positions was entitled to compensation appropriated and allowed by law for each of said classes of services.

In *Evans v. City of Trenton*, 4 Zab. [N. J.] 764, it was held that while a municipal officer is bound to perform such duties as his office properly requires without regard to the adequacy of his fixed compensation therefor, yet that for services performed upon request, and which it was not a part of his official duty to perform and which any other person might as well have performed, he was entitled to compensation from the city.

In *Love v. Baehr*, 47 Cal. 364, the attorney general was held properly to have been compensated by the legislature by a salary for services performed as a member of the board of examiners,—those services not being within the line of his duties as attorney general and consequently not to have been paid by his salary as such officer.

In *McBride v. City of Grand Rapids*, 47 Mich. 236, it was held that a city officer is entitled to be paid for acts done, under appointment of the common council, outside of his official duty; and there was the same holding in *Langdon v. Town of Castleton*, 30 Vt. 285.

We find the question of the incompatibility of employments as affecting distinct rights to compensation treated of in *Bryan v. Cattell*, 15 Ia. 538. Bryan, in January, 1861, was commissioned, qualified, and entered upon the discharge of his duties as district attorney. In July of the same year he was commissioned captain in a volunteer regiment for a term of three years, or during the civil war then in progress. By mandamus proceedings he sought to recover compensation as district attorney for the whole term to which he had been elected as such, notwithstanding the fact that for the greater part of said term he had been performing his duties as captain outside the limits of his state. For the part of his term during which he was outside the state, because of an ex-

press statutory provision, his claim for compensation was denied, but for the three months of his term during which he was within the state which was not governed by such statute his demand for compensation was enforced. In passing upon this branch of the case Wright, C. J., for the court, used this language: "We have no statutory declaration, in general language, prescribing what offices, from their nature, are incompatible. Looking to the common law, we are of the opinion that the incompatibility must be such as arises from the nature of the offices, or their relation to each other. Or, as Mr. Bouvier has it, 'They are such as are subordinate to, or interfering with, each other; for example, a man cannot be at once judge and clerk of the same court.' Bailey, J., in *Rex v. Tizzard* (17 Eng. C. L. 191) says: 'The two offices are incompatible, where the holder cannot in every instance discharge the duties of each.' And that incompatibility, as here used, must be such as arises from the nature of the duties, in view of the relation of the two offices to each other, seems to have its foundation in reason. If appellant's proposition is correct, then plaintiff would have surrendered his office if he had volunteered and gone into the service as a private. The acceptance of a captaincy would not change it, for his obligation to continue in the service would be no greater in the one case than in the other. The effect of such a rule would be to have the vacancy depend, not upon the acceptance of an office, but upon a particular employment. And yet this will scarcely be claimed. Not only so, but it by no means necessarily follows that a person in the military service might not discharge all the substantial duties of the attorneyship. It is scarcely probable that he could or would, and yet he might. Suppose the plaintiff in this case had been permitted by his superior officers to return and attend all the courts in his district. Would it have been claimed that because he was captain he was disqualified from discharging such duties? Or suppose he had been so connected with the

service that his regiment had been retained in the state or stationed in the county of his residence. Would his right to discharge the duties of the former office have been disputed? It seems to us clearly not, and if not, it is plain that there is nothing in the nature of the two offices incompatible with each other. The objection rests more upon how and where the duties of the second office are to be exercised than upon any necessary conflict between such offices." Following the above language there was a discussion of the right of an officer to receive payment for services which, from the nature of his office, he should, but has not, performed. On this subject it was said: "The better and safer rule doubtless is, that if he is, in point of law, actually in office, he has a legal right to the salary pertaining to it. His conduct may be such as to render him liable to removal, but when the statute makes no deduction for absence or neglect of duty, and the state takes no step as a consequence of such absence or delinquency, we suppose it is the legal right of the officer to demand the full salary allowed him by law. Different questions might and would, of course, arise when it was claimed that there had been a relinquishment of the office, or that the party, by removal from the state, or by resignation, or the like, had abandoned it. Such questions do not arise, however, in this case, and for the three months named, therefore, we hold the plaintiff was entitled to his salary."

The statute which created the office of commissioner of the supreme court in terms made incompatible with the duties of that office but one line of employment and that was the practice of law. It seems to us that this fact serves to illustrate the proposition stated by Chief Justice Wright for the Iowa supreme court, that the state can guard its interests by fixing the limit outside of which an officer may not perform other functions. In the case at bar general words of restriction could as well have been employed as particular words, and if it had been the legislative intent by statute to declare the du-

ties of a commissioner of the supreme court to be incompatible with the duties of lecturer to the law class, no doubt the desired inhibition would have been extended beyond the practice of law, either by broader, particular restrictive terms, or by language as effective, but general in its nature. The incumbent of an office of which the duration for a certain term of years and the salary are fixed by statute is not in any degree answerable to the auditor of public accounts for the manner in which he discharges his official duties. If during his said term such incumbent, under proper authority, renders services not incompatible with the duties of the office of which he is an incumbent, it is no sufficient answer to his claim for such extra services for the auditor of public accounts to urge that this claimant, as such incumbent, has already, by the state, been paid a salary for the quarter during which the extra services were rendered. The duties of a commissioner of the supreme court, neither by common law, nor by statute, are incompatible with the duties of a lecturer to a class in the college of law, and we are therefore of the opinion that the district court properly overruled the demurrer in this case, and accordingly its judgment is

AFFIRMED.

IRVINE, C., took no part in the decision.

SULLIVAN, J., dissenting.

The judgment in this case enforces a claim entirely meritorious. I think, however, the contract which is the basis of the action contravenes sound public policy and that the decision will prove to be a mischievous precedent. I therefore dissent.

NORVAL, J.

I am constrained, upon authority, to concur in the affirmance of the judgment of the trial court.