FRANK L. LATTIME *vs.* ALBERT F. HUNT & others.

Essex.    June 18, 1907. — September 17, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Municipal Corporations,* Officers and agents.    *Police.    Newburyport.    Civil Service.    Mandamus.    Damages.*

The mayor of a city, who had the exclusive power, subject to confirmation or rejection by the board of aldermen, of appointing police officers, received a letter from the city marshal which said " I hereby resign as city marshal, but do not resign but retain my position and rating as a police officer and request that I be assigned to such duty as you may direct," which, together with a copy of a vote of the civil service commission to the effect that the marshal did not, while acting as such, lose his rating as a police officer, the mayor enclosed in a communication to the board of aldermen, stating " I have accepted his resignation as city marshal and notify you I have assigned him to duty as night patrolman." The board of aldermen passed two votes, one " that the resignation be accepted," and the other " that the mayor's action assigning to duty as night patrolman be approved."    *Held,* that the accomplishment of the executive purpose rather than the precise phraseology used should define the legal effect of the action taken, and that there was an appointment to police duty.

By St. 1851, c. 296, §§ 8, 9, the mayor of the city of Newburyport is given power, subject to confirmation or rejection by the board of aldermen, to appoint a city marshal " and all other police officers."    A police officer, thus appointed and confirmed, and qualified in the classified service under civil service rules, also was appointed and confirmed as city marshal, with duties as a superior police officer, and accepted the office, receiving a salary as marshal but not as a police officer.    While holding the office of city marshal, he was reappointed a police officer, but did not act as such except in performing his duties as marshal.    The office of marshal was unclassified under the civil service rules. Acting under a rule of the civil service commission, by the terms of which, when a person who held an unclassified position also was appointed to a classified position the pay of which in their opinion was nominal and the duties of which were incidental to the first position, that commission was permitted to treat such appointment as provisional and to allow the employment to continue while such person was holding the unclassified position, the commission voted that the marshal appeared to be legally employed as a police officer, and that his continuance as marshal did not affect his rating as a police officer.    In a letter to the mayor, the marshal resigned as marshal but stated that he retained his rating as a police officer.    The mayor accepted the resignation as marshal and appointed him to police duty, and the board of aldermen confirmed that action.    A civil service rule allowed reappointment of one in the classified service to the same office immediately upon the expiration of his term of office without a new examination.    A succeeding mayor removed the police officer without the concurrence of the board of aldermen and without the notice and hearing provided by Sts. 1904, c. 314; 1906, c. 210, and he, continuing to report daily for duty, petitioned for a writ of mandamus directing the mayor and board of aldermen to

restore him to his position as police officer.  *Held*, that the writ should issue, but that the petitioner should seek to enforce the payment of arrears of salary in an action of contract.

PETITION, filed in the Supreme Judicial Court for the county of Essex and dated April 18, 1907, for a writ of mandamus directing the respondents to restore the petitioner to the position of police officer, from which office he alleged he had been removed illegally.

The mayor alone will hereinafter be referred to as the respondent, since he alone opposed the petition.

There was a hearing before *Braley*, J., who reserved the case for consideration and determination by the full court upon the petition, answer and agreed facts.

The petitioner in 1894 became a police officer of the city of Newburyport through appointment by the mayor and confirmation by the board of aldermen after he had qualified under the civil service rules, and was annually reappointed as such officer, his last appointment before the events hereinafter described having been in January, 1906, for a term which had not expired January 7, 1907.  In each of the years from 1898 to 1902, and in 1905 and 1906, he was duly appointed and qualified as city marshal also, with duties, under an ordinance, which may be briefly described as those of the police officer of highest rank in the city.  He did not, while he was marshal, have a regular beat.  He received as full compensation $1,000 a year while marshal, and, when he was acting as police officer but not as marshal, he received two dollars and fifty cents per day.

On December 28, 1906, William F. Houston, then mayor of Newburyport, in response to a letter of his, received a communication from the secretary of the civil service commission enclosing a copy of a vote of the commission that in their opinion the petitioner appeared " to be legally employed as a police officer of the city of Newburyport within the provisions of civil service law and rules, and that his continuance in the office of city marshal does not affect his rating as a police officer."

On January 2, 1907, while still city marshal, the petitioner wrote to the mayor and board of aldermen a letter which stated as follows : " I hereby surrender and resign my position as city marshal in the city of Newburyport, but do not resign or sur-

render but retain my position and rating as a police officer, and I request that I be assigned to such duty, day or night, as you may direct." This letter, together with the communication from the civil service commission, the mayor transmitted to the board of aldermen in a communication stating " I have accepted his resignation as city marshal and notify you I have assigned him to duty as night patrolman." The board of aldermen passed two votes, one " that the resignation of Frank L. Lattime be accepted," and the other " that the mayor's action assigning Frank L. Lattime to duty as night patrolman be approved."

On March 24, 1907, by order of the respondent, who in the meantime had become mayor, the petitioner was dropped from the city pay roll, the matter in no way having been referred to the board of aldermen. The petitioner did not acquiesce in the mayor's action, but reported daily thereafter for duty, and made a proper request both from the mayor and the board of aldermen for a public hearing, which had not been granted when this petition was filed.

Under the civil service rules, a regular or special officer of the police force and all persons doing temporary police duty in any city except Boston were in class 3 of schedule B of the first division of the classified service. The office of marshal was unclassified.

The thirty-first civil service rule, referred to in the opinion, is the rule of that number contained in the twenty-third report of the civil service commission, and, so far as it concerns this case, is as follows :

" 1. When a person holding a position exempted from civil service classification is also appointed to a position which falls within the classification, and the pay of which, in the opinion of the civil service commissioners, is nominal, and the duties of which are incidental to those of the unclassified position, the commissioners may treat such appointment as provisional, and allow the employment to continue while such person is holding the unclassified position."

So much of the thirty-third civil service rule as concerns this case is as follows :

" 1. No examination shall be required upon a re-appointment

of any person to the same office immediately upon the expiration of his term of office."

Other facts are stated in the opinion.

The case was submitted on briefs.

*H. I. Bartlett*, for the petitioner.

*G. H. O'Connell*, for the respondent Hunt.

BRALEY, J. By St. 1851, c. 296, the city of Newburyport was established, and by § 8 the mayor and board of aldermen were vested in the administration of the police with all the powers possessed by the selectmen of the town before it became a city. They further were given " full and exclusive power to appoint a constable and assistants, or a city marshal and assist-tants with the powers and duties of constables and all other police officers, and the same to remove at pleasure." This provision, so far as it relates to the exercise of the power of appointment, has not been curtailed by the amendments to the charter found in Sts. 1895, c. 266, 1899, c. 101, and the establishment of the civil service of the Commonwealth by St. 1884, c. 320, now R. L. c. 19, under which, since then, the police department has been classified. But, as defined in St. 1851, c. 296, § 9, whenever appointments to office are directed under the act to be made by the mayor and aldermen, the exclusive power of nomination was conferred upon the mayor, subject to confirmation or rejection by the board of aldermen.

The petitioner became a police officer in 1894, and has since served continuously by annual reappointment, either in the ranks or as city marshal. In 1907, while holding the latter office, he resigned, although stating that he did not intend thereby to retire from the service.

It may be doubtful whether, under the language of the charter, or under that of the ordinance, upon his acceptance of the office of marshal, he still remained an "assistant." The two offices ordinarily are deemed distinct, with incompatible duties, as on becoming the chief officer, with the power of command and authority to enforce obedience, it may be said that he ceased to be a subordinate. We do not, however, deem it necessary on this branch of the case to decide whether they can be treated as having been coexistently held or exercised. See *Commonwealth* v. *Hawkes*, 123 Mass. 525, 529, 530 ; *United States* v.

*Wright,* 1 McLean, 509; *Milward* v. *Thatcher,* 2 T. R. 81; *The King* v. *Patteson,* 4 B. & Ad. 9; *The King* v. *Tizzard,* 9 B. & C. 418; *Magie* v. *Stoddard,* 25 Conn. 565; *State* v. *Hoyt,* 2 Ore. 246; *Bryan* v. *Cattell,* 15 Iowa, 538; *People* v. *Green,* 58 N. Y. 295.

If the act of resignation is treated as a retirement from the department itself, as claimed by the present mayor, who alone contests the petition, it was within the lawful authority of his predecessor to reappoint, and of the board of aldermen to confirm the petitioner as a police officer. When communicating to the board his official acceptance of the petitioner's resignation of the marshalship, in which they concurred, the mayor then in office stated that the petitioner had been assigned by him to duty under the designation of a "night patrolman." It is the accomplishment of the executive purpose, rather than the precise phraseology used, which defines the legal effect of the action taken, and, in whatever form expressed, this assignment was intended by the chief executive of the city to be an appointment to police duty. The nomination having been confirmed, the petitioner under the charter and the city ordinance would have been constituted a police officer with all the powers of a constable, except those pertaining to the service and execution of civil process. *Commonwealth* v. *Cushing,* 99 Mass. 592. Sts. 1851, c. 162; 1851, c. 296. R. L. c. 25, § 44. *Commonwealth* v. *Sullivan,* 165 Mass. 183. But the important question upon the decision of which the petitioner's right to relief depends is, whether this selection and appointment also were in conformity with the laws governing the civil service, whose violation was alleged by the respondent in his order to the city clerk as the ground for dismissal. The agreed facts distinctly state that originally, after a strict compliance with the rules of the civil service, he received his first appointment as a police officer, and until his resignation he never retired from this office unless during the years when he accepted the superior office of marshal. But, under the system of dual appointments which had been adopted, the acceptance and discharge of the duties of the unclassified office of marshal, which included the incidental qualifications required for the subordinate position, placed the petitioner, who while thus employed received no wages as a patrolman, substantially within

the provisions of the thirty-first rule of the civil service authorizing the commissioners to treat him as provisionally a police officer during the time he held the marshalship. *Attorney General* v. *Trehy*, 178 Mass. 186. St. 1884, c. 320, § 15. R. L. c. 19, § 9. The course pursued having received the sanction of the civil service commission, who may be presumed to have acted under the authority conferred by this rule, he must be considered as having preserved his rating and eligibility from year to year without further examination. The last appointment, even if made nearly at the close of the municipal year, does not differ from those previously made, and, under civil service rule thirty-three, being simultaneous with the acceptance of the resignation, the nomination should be treated as essentially a reappointment to the same office.

The term of service, while not specified by the ordinance, was originally fixed by the charter to continue during the pleasure of the mayor and aldermen. If this provision is construed as meaning an annual appointment, even then both must concur in the exercise of the power of removal during the year before the petitioner could be lawfully deposed. *Murphy* v. *Webster*, 131 Mass. 482, 488. See also St. 1851, c. 296, §§ 8, 9. In *Lahar* v. *Eldridge*, 190 Mass. 504, it was held that an ordinance was valid which prescribed the period of service of a classified police officer, who was annually appointed, at the expiration of which he ceased to hold office, and that a provision in the amended charter requiring removals to be for cause meant only a removal during the year, and did not have the effect of prolonging his tenure. See also *Smith* v. *Haverhill*, 187 Mass. 323. But following this decision St. 1906, c. 210, was enacted, which was in force when the petitioner received his last appointment. This act provides that " every police officer now holding or hereafter appointed to an office classified under the civil service rules of the Commonwealth, in any city, and whether appointed for a definite or stated term, or otherwise, shall hold office continuously during good behavior, and shall not be removed therefrom . . . or suspended . . . except for just cause, and for reasons specifically given in writing by the removing officer or board." By § 2, the second section of the St. of 1904, c. 314, is made applicable, which requires notice to the person whose

removal is sought, with a copy of the reasons assigned, and, if requested in writing, he is to be given a public hearing upon the charges preferred.

The course pursued in directing the dismissal of the petitioner without the concurrence of the board of aldermen and without proceeding as required by these statutes was therefore wrongful and unjustifiable. Having been unlawfully deprived of his office, with its emoluments, the petitioner should be restored, and for this purpose a peremptory writ of mandamus is to issue. But he must be remitted to an action of contract to recover any arrears of salary to which he may be found justly entitled. *Ransom* v. *Mayor of Boston*, 193 Mass. 537. *Hill* v. *Fitzgerald*, 193 Mass. 569. *Ransom* v. *Boston*, 192 Mass. 299.

*Ordered accordingly.*